THE COUNTY OF MACON, Plaintiff-Appellant, v. JIM O. EDGCOMB *et al.*, Defendants-Appellees.

Fourth District   No. 4—95—0073

Argued July 12, 1995.—Opinion filed August 17, 1995.

Bernard A. Reinert and John W. Rourke (argued), both of Reinert & Duree, P.C., of St. Louis, Missouri, for appellant.

Timothy J. Howard and Stephen C. Ferlmann (argued), both of Howard & Howard Attorneys, P.C., of Peoria, for appellee First of America Bank-Illinois, N.A.

Michael I. Campbell (argued), of Campbell & Robinson, of Decatur, for appellee Magna Bank of Illinois.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, the County of Macon (County), brought this action against Jim Edgcomb, Deborah Smith (f/k/a Deborah Edgcomb), Magna Bank of Illinois (Magna), and First of America Bank-Decatur, N.A. (FOA), to recover over $400,000 Edgcomb embezzled from the County. The trial court dismissed the counts against FOA and Magna and made a finding under Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason for delaying appeal. Plaintiff appeals. We affirm in part, reverse in part, and remand.

According to the County's second-amended complaint, Edgcomb, who served as Macon County treasurer between 1986 and November 30, 1990, falsified various official financial records and documents and embezzled $419,749 in public funds from various official county bank accounts. During the time period in question, the County maintained the Macon County collector's account, the Macon County treasurer's drainage account, and the Macon County treasurer's late funds due account at the First National Bank of Decatur, a former party to the lawsuit. In addition, the County maintained two Macon County tax protest accounts, one at FOA and one at Magna. Edgcomb and Deborah maintained a personal account, "Jim O. or Deborah K. Edgcomb," No. 177-2562, at Citizens National Bank (now FOA).

## I. STATUTORY BACKGROUND

The Uniform Negotiable Instruments Law, drafted in 1896 and adopted in every State by 1924 (Ill. Ann. Stat., ch. 26, art. III, Intro-ductory Comment, at 4 (Smith-Hurd 1963)), was enacted in Illinois in 1907 as the Negotiable Instrument Law (1907 Ill. Laws 403 (eff. July 1, 1907)). The Uniform Negotiable Instruments Law required actual knowledge or bad faith before the taker of any instru-

ment was put on notice of any infirmity or defect, but where it appeared on the face of the instrument that the instrument was drawn or indorsed by a fiduciary, "the courts have usually ignored the [Uniform] Negotiable Instruments Law, and have simply said that the payee or indorsee is bound to make inquiry." Uniform Fiduciaries Act § 6, Comment, 7A U.L.A. 410 (1985).

The Uniform Fiduciaries Act, approved by the National Conference of Commissioners on Uniform State Laws (Commissioners) and the American Bar Association in 1922 (Uniform Fiduciaries Act, Historical Note, 7A U.L.A. 391 (1985)), was designed to overturn those cases and reapply the Uniform Negotiable Instruments Law. (Uniform Fiduciaries Act § 6, Comment, 7A U.L.A. 410 (1985); see also 810 ILCS Ann. 5/3—307 & Uniform Commercial Code Comment, at 163-64 (Smith-Hurd 1993) (reapplying actual knowledge requirement from Uniform Negotiable Instruments Law).) The Uniform Fiduciaries Act was enacted in Illinois in 1931 as "An Act concerning liability for participation in breaches of fiduciary obligations" (Act) (1931 Ill. Laws 676 (eff. July 7, 1931)); first appearing in chapter 98 (Ill. Rev. Stat. 1931, ch. 98, pars. 234 through 245), and later transferred to chapter 17 (Ill. Rev. Stat. 1981, ch. 17, pars. 2001 through 2012 (now titled Fiduciary Obligations Act (760 ILCS 65/ 0.01 through 12 (West 1992)))).

In 1961, Illinois enacted its Uniform Commercial Code (UCC), a variant on the 1958 Official Text of the Uniform Commercial Code promulgated by the Commissioners, and repealed the Negotiable Instrument Law. 1961 Ill. Laws 2101, 2270 (eff. July 1, 1962).

## II. STATUTORY APPLICATION

There are many legitimate reasons why an agent and principal might engage in odd checking practices. The purpose of the Act is to facilitate banking and financial transactions and place on the principal the burden of employing honest fiduciaries. (*Johnson v. Citizens National Bank* (1975), 30 Ill. App. 3d 1066, 1072, 334 N.E.2d 295, 300.) The Act provides protection where a person deals honestly with another knowing him to be a fiduciary. *Hosselton v. First American Bank* (1993), 240 Ill. App. 3d 903, 907, 608 N.E.2d 630, 633-34.

The Act covers all sorts of situations where fiduciaries (which include "agents" and "public officers") deal with the funds of their principals. The Act applies where a fiduciary endorses instruments made payable to the principal or to the fiduciary in his fiduciary capacity (section 4), or where the fiduciary draws checks in his fiduciary capacity (section 5). (760 ILCS 65/4, 5 (West 1992).) The Act addresses the liability of those to whom the fiduciary endorses an instru-

ment (section 4), or makes an instrument (section 5), or the bank upon which the instruments are drawn, whether the account is in the name of the fiduciary as such (section 7), or in the name of the principal (section 8). (760 ILCS 65/4, 5, 7, 8 (West 1992).) In all these cases, those who deal with the fiduciary are not liable unless they have actual knowledge the conduct constitutes a breach of fiduciary obligation or there is bad faith. Notice of the existence of the fiduciary relationship is not enough to raise a duty of inquiry. An example of bad faith is where the taker suspects that the fiduciary is acting improperly and deliberately refrains from investigating in order that he may avoid knowledge that the fiduciary is acting improperly. Uniform Fiduciaries Act § 6, Comment, 7A U.L.A. 410-11 (1985).

There is liability, however, where an instrument is taken "in payment of or as a security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is transferred in any transaction known by the transferee to be for the personal benefit of the fiduciary." (760 ILCS 65/4 (West 1992).) In those cases, the creditor (sections 4, 5), or the payor bank (if payment is made to it on a debt (sections 7, 8)), is liable, without more, to the principal if the fiduciary has breached his obligation. One further responsibility on the part of a payor bank (also referred to as a drawee bank) should be noted. The payor bank is protected under section 7 when it pays checks on the account only if the fiduciary's check is "signed with the name in which such deposit is entered." (760 ILCS 65/7 (West 1992).) The rule seems designed to prevent the situation where a personal debt is paid but the creditor is able to avoid liability because the check appears to be a personal check, even though it was drawn on a fiduciary account.

Where the fiduciary writes a check on his principal's funds to himself personally, it may be that the fiduciary was entitled to receive payment for salary, expenses, or the like. (Uniform Fiduciaries Act § 6, Comment, 7A U.L.A. 411 (1985).) In these cases, there is liability for those who deal with the fiduciary only if there is actual knowledge of the breach of fiduciary obligation or bad faith, even if the fiduciary's personal debt is paid with the check or the transaction is known to be for the personal benefit of the fiduciary (section 6). 760 ILCS 65/6 (West 1992).

There has been a broad rule under the Act that where a fiduciary makes deposits to his personal account, even of checks payable to himself as a fiduciary or of checks payable to the principal and endorsed by the fiduciary, the bank has no liability for withdrawals in the absence of actual knowledge of the breach of fiduciary obliga-

tion or bad faith (section 9). (760 ILCS 65/9 (West 1992).) There is no liability under the Act even when those withdrawals are used to pay a personal debt owed the bank, in the absence of actual knowledge or bad faith. *Johnson*, 30 Ill. App. 3d at 1072, 334 N.E.2d at 300 (principal's funds deposited in fiduciary's personal account; fiduciary wrote personal check on that account to bank for personal debt; held, no liability to principal on part of bank); *Hosselton*, 240 Ill. App. 3d at 907, 608 N.E.2d at 633 (no cause of action against bank where principal's funds deposited in personal account and personal checks were written against that account).

A conflicting rule was adopted by the Commissioners when they revised article 3 of the Uniform Commercial Code in 1990. (Uniform Commercial Code § 3—307 & Official Comment, 2 U.L.A. 76-79 (1991); see also 2 U.L.A. III (Explanation) (1991).) Section 3—307(b)(2) of the UCC provides a bank "has notice of the breach of fiduciary duty" if an instrument payable to the principal or the fiduciary as such is "deposited to an account other than an account of the fiduciary, as such, or an account of the represented person." (810 ILCS 5/3—307(b)(2) (West 1992); see also 810 ILCS Ann. 5/3—307, Uniform Commercial Code Comment 3, at 164 (Smith-Hurd 1993).) When choosing between two statutes in direct conflict, the more recent enactment generally will prevail as the later expression of legislative intent. (*Jahn v. Troy Fire Protection District* (1994), 163 Ill. 2d 275, 282, 644 N.E.2d 1159, 1162.) However, amendatory acts dealing with substantive matters will generally be construed as prospective, unless the act clearly indicates otherwise. (*Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 308, 522 N.E.2d 1195, 1198.) The legislature has provided that, apart from changes in section 3—806 of the UCC (810 ILCS 5/3—806 (West 1992)), the amendments to article 3 were effective January 1, 1992. (Pub. Act 87—582, § 3, eff. January 1, 1992 (1991 Ill. Laws 2858, 2942).) The Act, and not the UCC, controls this case.

## III. ANALYSIS

Count X of the complaint is directed to FOA and complains of two checks: No. 413, dated May 30, 1990, in the amount of $3,132.49, drawn on the Macon County tax protest account at Citizens (now FOA) and used to pay an Edgcomb commercial loan at Magna; and No. 414, drawn the same date on the same account, in the amount of $5,010.51, and deposited in an Edgcomb personal account (No. 177-2562) at FOA. Check No. 414 is discussed below. Although Magna, as payee of check No. 413, may have some liability under section 5 of the Act for taking that check in payment of a loan, FOA has no li-

ability as payor of the check under section 7 of the Act unless it had actual knowledge of a breach of fiduciary obligation or bad faith. (Ill. Rev. Stat. 1989, ch. 17, pars. 2005, 2007.) Count X alleges that FOA had "actual or constructive knowledge" of Edgcomb's breach of fiduciary obligations or other facts causing its actions to be in bad faith. Constructive knowledge, of course, is not sufficient under the Act.

■ We recognize that it is difficult for a plaintiff to plead facts which are exclusively within defendant's knowledge (see *Yuretich v. Sole* (1994), 259 Ill. App. 3d 311, 313, 631 N.E.2d 767, 770), but we are unwilling to allow plaintiff to avoid dismissal here by simply reciting the words "actual knowledge" and "bad faith." The Act is meant to limit liability "to relatively uncommon cases in which the person who deals with the fiduciary knows all the relevant facts." (810 ILCS Ann. 5/3—307, Uniform Commercial Code Comment 2, at 164 (Smith-Hurd 1993).) The complaint contains no hint that this is such a case. Our views are reinforced by the fact that count X goes on to list the facts on which FOA's "knowledge" was based: FOA knew (1) the true ownership of the accounts, (2) the funds were used for a personal purpose, (3) there were improper or unauthorized signatures, (4) there were improper, unauthorized and sometimes no endorsements, and (5) the large dollar amounts of the transactions. The Act specifically provides that facts (1), (2) and perhaps (5), without more, cannot be a basis for liability. If by "unauthorized" plaintiff means that Edgcomb breached his fiduciary duty in drawing the checks, there is no indication that FOA had actual knowledge of that fact. The Act uses the word "authorized" in a different sense, *i.e.*, to mean power in general to write or endorse checks, not permission to use that power in a particular instance. Copies of the instruments are attached to the complaint, and we have not been shown any improper or unauthorized signatures or endorsements. Count X was properly dismissed.

■ Count XI complains of deposits of funds under Edgcomb's control, in breach of his fiduciary duties, to his personal account (No. 177-2562) at FOA, and the writing of a number of personal checks on that account. Although a different rule may exist under the UCC since January 1, 1992, section 9 of the Act (Ill. Rev. Stat. 1989, ch. 17, par. 2009) provides FOA has no liability in this situation absent actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or drawing such check, or bad faith. Plaintiff's allegations of actual knowledge or bad faith are no better in this count than they were in count X. Check No. 414 (referred to in count X), drawn on a fiduciary account at FOA and deposited in a personal account at FOA, falls in the same category. We see no justification under the Act for a different rule where the

checks were written on an FOA account and also deposited in an FOA account.

One of the checks written on personal account No. 177-2562 is check No. 228, dated October 16, 1989, in the amount of $3,198.66, made payable to Citizens (now FOA) to pay off a personal loan at Citizens. FOA has no liability as payor of that check under section 9 of the Act (Ill. Rev. Stat. 1989, ch. 17, par. 2009) because section 9 does not impose any special liability for the payment of a personal debt from a personal account. FOA has no liability as payee of that check under section 5 of the Act (Ill. Rev. Stat. 1989, ch. 17, par. 2005) because the check was a personal check, not a check drawn in the name of the principal or by the fiduciary as such. The argument could be made that FOA has actual knowledge as a creditor under section 5 because, although the check it took was a personal check, the check was drawn on a personal account at FOA, a personal account in which FOA knew fiduciary funds had been deposited. However, the knowledge of an organization is determined by the knowledge of the "individual conducting that transaction." (810 ILCS 5/1—201(27) (West 1992); see also 810 ILCS Ann. 5/3—307, Uniform Commercial Code Comment 2, at 163 (Smith-Hurd 1993).) There is no indication the FOA employee who took check No. 228 for payment on the loan had any knowledge that check, which indicated it was drawn on a personal account, was drawn on an account into which fiduciary funds had been deposited. Count XI was properly dismissed.

■ Count XIV alleges that FOA received the benefit of two cashier's checks, No. 306414840 dated March 15, 1988, and No. 306414850 dated March 17, 1988. Those checks were purchased with funds from the Macon County treasurer's late funds due account at First National Bank of Decatur and were made payable to FOA. There is no allegation that the funds were applied to any debt due FOA, or that FOA had any actual knowledge of a breach of fiduciary obligation or bad faith. Perhaps plaintiff was entitled to some discovery before its case was dismissed (see *Yuretich*, 259 Ill. App. 3d at 317, 631 N.E.2d at 772), but plaintiff had ample time to have taken some discovery here. Count XIV was properly dismissed.

Counts XII, XIII, and XV repeat previous allegations and were properly dismissed. In summary, all the allegations against FOA were properly dismissed.

■ Count XVI, directed against Magna, complains of two checks drawn on the Macon County tax protest account at Magna and deposited into a personal Edgcomb account at First National Bank of Decatur, with part taken in cash by Edgcomb. The checks are No. 1076, dated August 27, 1990, in the amount of $12,000, and No. 1253,

dated October 12, 1990, in the amount of $12,000. Check No. 1076 bears the printed name "Macon County Tax Protest Account, Jim O. Edgcomb," and is signed by Edgcomb. Check No. 1253 is not attached as an exhibit. These checks are governed by section 7 of the Act, and Magna is not liable on them unless it paid them "with the actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith." (Ill. Rev. Stat. 1989, ch. 17, par. 2007 (now 760 ILCS 65/7 (West 1992)).) Again, plaintiff has not sufficiently alleged actual knowledge or bad faith in this count. Count XVI was properly dismissed.

█ Count XVII complains of four checks which were used to make payments on personal loans at Magna. Two of those checks were drawn on the Macon County treasurer's drainage account at First National Bank of Decatur: No. 229, dated October 18, 1989, in the amount of $4,563.18, which was applied to Edgcomb personal loan No. 87110 at Magna; and No. 239, dated December 8, 1989, in the amount of $1,423.93, which was applied to Edgcomb personal loan No. 86634 at Magna. Another check was cashier's check No. 298979304, dated June 19, 1990, in the amount of $12,000, allegedly purchased with funds from the Macon County collector's account at the First National Bank of Decatur and paid on an Edgcomb personal loan at Magna. The final check was No. 413, drawn on the Macon County tax protest account at Citizens (now FOA) in the amount of $3,132.49 and paid on Edgcomb commercial loan No. 3307-87405 at Magna.

Check Nos. 229, 239, and 413 all show on their face that they are drawn "in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal" (section 5). (Ill. Rev. Stat. 1989, ch. 17, par. 2005 (now 760 ILCS 65/5 (West 1992)).) It is alleged that the instruments were paid to Magna "in payment of or as security for a personal debt of the fiduciary to the actual knowledge" of Magna (section 5). (Ill. Rev. Stat. 1989, ch. 17, par. 2005.) If the Magna employee taking the checks for payment knew that the loans on which the checks were applied were personal loans (see 810 ILCS 5/1—201(27) (West 1992); 810 ILCS Ann. 5/3—307, Uniform Commercial Code Comment 2, at 163 (Smith-Hurd 1993)), then Magna is liable "if the fiduciary in fact commit[ted] a breach of his obligation as fiduciary in drawing or delivering the instrument" (section 5). (Ill. Rev. Stat. 1989, ch. 17, par. 2005.) It is not necessary, under section 5 of the Act, to allege that Magna had actual knowledge of the breach of fiduciary duty or bad faith. Count XVII accordingly states a good cause of action against Magna as to these checks. The trial

court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proved which will entitle a plaintiff to relief. *Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 488, 639 N.E.2d 1282, 1291.

The cashier's check is a different story. It is not a check drawn by a fiduciary as such or in the name of his principal, and accordingly Magna has no liability on it, at least no liability in the absence of actual knowledge that the use of the check constituted a breach of fiduciary obligation, or bad faith.

■ Counts XVIII, XIX, XX, and XXI, directed against Magna, repeat previous allegations and accordingly were properly dismissed. Plaintiff argues that other theories are available to it outside the Act, such as facilitating breach of trust, conversion, unjust enrichment, and a statutory action under article XX of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 20—101 through 20—105 (now 735 ILCS 5/20—101 through 20—105 (West 1992))). We disagree. As discussed above, the Act covers all sorts of situations where fiduciaries deal with the funds of their principals, and provides that all inconsistent acts are repealed. (760 ILCS 65/12 (West 1992).) The law which previously applied to cases "not provided for in this Act" continues to apply (Ill. Rev. Stat. 1989, ch. 17, par. 2011 (now 760 ILCS 65/11 (West 1992))), but it is difficult to conceive of any situation not provided for by the Act. (See also 810 ILCS Ann. 5/3—307, Uniform Commercial Code Comment 1, at 163 (Smith-Hurd 1993) (rules "comprehensively cover" issue when taker has notice).) Article XX of the Code, Recovery of Fraudulently Obtained Public Funds (735 ILCS 5/20—101 through 20—105 (West 1992)), does not provide any cause of action in this case.

■ The County argues (but did not allege) that once Magna took check No. 229, drawn on the Macon County treasurer's drainage account at First National Bank, in payment of an Edgcomb personal loan on October 18, 1989, Magna had the duty to inquire as to all checks involving Edgcomb. The question with the subsequent checks is not whether it would have been reasonable to inquire further. The question is whether Magna acted in bad faith in failing to do so. It is true that a bank must exercise due diligence in communicating significant information to its employees who conduct its transactions. (810 ILCS 5/1—201(27) (West 1992).) The fact the fiduciary is known to have used fiduciary funds for his personal benefit in the past may be important evidence whether a bank has actual knowledge the particular transaction before it is in breach of the fiduciary's duty, but it does not automatically result in liability for all transactions which follow. Again, plaintiff has not sufficiently alleged actual knowledge or bad faith against Magna.

## IV. CONCLUSION

Accordingly, we reverse the trial court's dismissal of count XVII against Magna, insofar as it related to check Nos. 229, 239, and 413, and remand for further proceedings in accordance with this opinion. We affirm the trial court's dismissal of the remaining counts against Magna, and all counts against FOA.

Affirmed in part; reversed in part, and remanded.

KNECHT, P.J., and GREEN, J., concur.