684 So.2d 1088 (1996)
Billy GRAHAM, Plaintiff-Appellant,
v.
David R. STROTHER, et al., Defendants-Appellees.
No. 28892-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
Writ Denied March 7, 1997.
*1089 Cook, Yancey, King & Galloway by Curtis R. Shelton, Graves, Graves & Hanna by Randall R. Robinson, for Plaintiff-Appellant.
David R. Strother, in Pro. Per.
Norman Lafargue, for Defendant-Appellee, Pioneer Bank & Trust.
Before NORRIS, BROWN and WILLIAMS, JJ.
WILLIAMS, Judge.
Plaintiff, Billy Graham, appeals a trial court's judgment dismissing his action on an exception of prescription filed by the defendant, Pioneer Bank and Trust Company ("Pioneer"). For the reasons expressed, we affirm the trial court's judgment insofar as it sustains the exception; however, we amend the judgment to make the dismissal of the action without prejudice and remand the case to the trial court to allow Graham the opportunity to amend his petition.

FACTS
Beginning in 1983, Graham started "investing" funds with Institutional Management Corporation ("IMC") through David R. Strother who claimed he was a representative of IMC.[1] Between December 1983 and May 1986, Graham issued three checks drawn on Commercial National Bank ("CNB") totaling $238,000.00 for "investment." Graham and his wife also endorsed a check in the amount of $50,470.33 to Strother for "investment." The record reflects that Graham received bank statements within ten days of the statements' issue dates showing that each of the three checks issued to IMC had cleared his account. The last bank statement Graham received was dated June 6, 1986. Strother endorsed all the checks "for deposit only" on behalf of IMC, and deposited them at Pioneer.
On or about July 31, 1990, Graham attended a meeting of persons who had invested funds through Strother. Graham learned that Strother had misappropriated his funds. Graham filed a securities lawsuit against one of Strother's former securities and brokerage firms and also filed criminal charges against Strother.[2]
On November 23, 1993, Graham instituted this action against Pioneer. In his petition, he alleged that Pioneer failed to comply with *1090 standards of commercial reasonableness and was negligent in allowing Strother to establish an account for IMC without verifying: (1) that IMC existed; (2) that Strother was an officer of the corporation; (3) that Strother had the authority to establish the account. He further argued that Pioneer collected checks made payable to IMC and by virtue of its collection, Pioneer made the warranties of LSA-R.S. 10:4-207 to Graham. Graham argues that Pioneer breached those warranties in that (1) Strother did not have good title to the checks at issue in this lawsuit and neither did Pioneer as Strother's transferee; (2) Strother did not have authority to endorse or negotiate checks for IMC; (3) Pioneer should have known that Strother's endorsement of the checks was unauthorized.
Pioneer answered the lawsuit and subsequently filed an exception of prescription. The district court granted Pioneer's exception and dismissed Graham's suit. The trial court found that under LSA-R.S. 10:4-207, a claim for breach of warranty must be brought within a reasonable time, and that the prescriptive period found in the Louisiana Civil Code that addresses the situation most closely analogous to the facts of the present case is the three-year prescriptive period for money lent in LSA-C.C. Art. 3494. The trial court concluded that since Graham brought his claim more than three years after his discovery of the misappropriation of his funds, his claim had prescribed. Graham appeals the trial court's judgment.

DISCUSSION
Graham contends the trial court erred in applying, by analogy, the three-year prescriptive period of LSA-C.C. Art. 3494 to this action. To support his contention, Graham argues that under LSA-C.C. Art. 3457, there is no prescription other than that established by legislation. Consequently, he argues that since there is no statute specifying a prescriptive period for a warranty action brought by the maker of a check, then the only prescription applicable is the ten-year period of LSA-C.C. 3497. Graham further contends the trial court erred in finding that he did not file his lawsuit within a reasonable time. To support this contention, Graham argues that subsection (4) of LSA-R.S. 10:4-207, the statute under which he brings his claim, requires the warrantor to show that it suffered a loss due to a plaintiff's unreasonable delay in bringing a claim before the warrantor can assert unreasonable delay as a defense.[3] Graham contends that since Pioneer presented no evidence to show that it suffered a loss due to any delay on Graham's part, Pioneer is not entitled to assert Graham's delay as a defense.
Pioneer, on the other hand, contends that Graham's suit has prescribed under LSA-R.S. 10:4-406(4) and (5)[4] since Graham failed to bring this action within three years of the time he received the canceled checks that represent the funds at issue in this lawsuit. Pioneer further contends Graham's action has prescribed under LSA-R.S. 10:4-207 since he did not file it within a reasonable time after his discovery of Pioneer's alleged breach of warranty. Finally, Pioneer contends Graham's claim has prescribed under the three-year prescription of LSA-C.C. Art. 3494. We conclude that Graham's claim is not subject to the three-year prescription of LSA-C.C. Art. 3494. However, we find that based upon the allegations of his petition, Graham's claim has prescribed under LSA-R.S. 10:4-406(4).
Prescriptive periods may not be extended by analogy from one subject to another, since there is no prescription other than that established by legislation. LSA-C.C. Art. 3457; Academy Park Improvement Association v. City of New Orleans, 469 So.2d 2 (La.App. 4th Cir.1985); writ denied, *1091 475 So.2d 361 (La.1985). Thus, the trial court erred in relying on LSA-C.C. Art. 3494 to determine that a three-year prescriptive period applied to Graham's claim.
No Louisiana court has previously addressed the issue of whether the defenses of LSA-R.S. 10:4-406 are applicable in an action where the maker of a check files suit for breach of warranty against a collecting bank under LSA-R.S. 10:4-207. However, the courts of other states have addressed the issue, and we have examined those cases for guidance.
In Kobuszewski v. Scriber, 518 So.2d 524 (La.App. 2d Cir.1987), this court held that the maker of a check could bring a direct action for breach of warranty against the collecting bank under LSA-R.S. 10:4-207. In so holding, we relied upon the rationale of New York Life Insurance Company v. Bank of Commerce, Nos. 81-1555 and 82-1699, 1985 WL 12004, (W.D.La.11/12/85), Allied Concord Financial Corporation v. Bank of America National Trust & Savings Association, 275 Cal.App.2d 1, 80 Cal.Rptr. 622 (1969), and Sun `n Sand, Inc. v. United California Bank, 21 Cal.3d 671, 148 Cal. Rptr. 329, 582 P.2d 920 (1978). These cases, applying the identical UCC provision contained in LSA-R.S. 10:4-406[5], also hold that in a direct action for breach of warranty by a plaintiff against a collecting bank, the collecting bank is entitled to assert the defenses of Section 4-406.
LSA-R.S. 10:4-406(5) provides in pertinent part:
§ 4-406. Customer's duty to discover and report unauthorized signature or alteration
(5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim.
In the above-mentioned cases, the courts concluded that in an action where the maker of a check sues his payor bank and the payor bank in response sues the collecting bank, Section 4-406(5) allows the collecting bank to avoid any loss the payor bank could have avoided by asserting a Section 4-406 defense against the maker of the check. Obviously, the protections afforded payor banks were to be extended to collecting banks under certain circumstances. Thus, if the maker of a check is allowed to sue a collecting bank directly, then collecting banks must be given the same protection they would have been given in a third party action, and must be allowed to assert the 4-406 defenses. Although this jurisprudence is not binding upon us, we adopt this reasoning as sound and hold that Pioneer is entitled to assert the defenses of LSA-R.S. 10:4-406.
LSA-R.S. 10:4-406(4) provides in pertinent part:
(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration. [Emphasis ours]
In the present case, Graham did not file this suit until more than six years after the last check at issue was made available to him. Clearly, his claim has prescribed.
Graham argues that Section 4-406 is not applicable to his claim since he is not Pioneer's customer. He cites 6 Hawkland et al., Uniform Commercial Code Series, § 4-406:09 at 511 and Robbins v. First Federal Savings Bank, 294 S.C. 219, 363 S.E.2d 418 (Ct.App.1987) in support of this argument. However, we are not bound by either authority, and as we have already noted, we *1092 have chosen to adopt a contrary view. Thus, this argument must fail.
Graham further argues that even if Section 4-406 would ordinarily apply to his type of claim, it does not apply under this factual situation because the wrongdoer has not previously forged the signature of the bank's customer as the drawer or made an alteration to the item drawn by the customer. In support of this argument, he cites: First National Bank of Arizona v. Plymouth-Home National Bank, 553 F.Supp. 448, (D.Mass.1982); East Gadsden Bank v. First City National Bank, 281 So.2d 431, 50 Ala. App. 576 (1973); and, Murray Walter, Inc. v. Marine Midland Bank, 103 A.D.2d 466, 480 N.Y.S.2d 631 (1984). However, none of the defendants in these cases were asserting Section 4-406(4) as a defense to liability. More importantly, none of the cases involved the maker of a check directly suing the collecting bank. In fact, they all involved situations in which either the main or threshold issue was the type of defense available to the drawee against its customer. Therefore, these cases do not shed any light on whether Section 4-406(4) is applicable in a direct action for breach of warranty filed by the maker of a check against the collecting bank. This argument lacks merit.
Finally, Graham argues that Pioneer should lose its right to assert the 4-406(4) defense because the allegations of his petition establish that Pioneer acted in bad faith. Citing Lichtenstein v. Kidder, Peabody & Co., 777 F.Supp. 423 (W.D.Pa.1991), Graham argues in his brief that if the allegations of his petition are insufficient to set forth a claim based on bad faith, then he should be allowed to amend his petition under LSC.C.P. to amend his petition under LSA-C.C.P. Art. 934.
In Lichtenstein v. Kidder, supra, the trial court granted a partial summary judgment in favor of the defendant based on defendant's assertion of the defenses of Section 4-406. The plaintiff requested that the court rescind the summary judgment due to newly discovered evidence that showed that the defendant may have been guilty of constructive fraud. Lichtenstein v. Kidder, supra at 425-26. The court held that as a matter of law, a bank that has engaged in fraudulent conduct has acted in bad faith and is not entitled to the protection of Section 4-406. The court based its conclusion on UCC Sec. 1-203, which states: "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Noting that bad faith is a factual question, the court remanded to the trial court for a determination of whether the defendant acted in bad faith.
LSA-R.S. 10:1-203 is identical to Sec. 1-203. We adopt the reasoning of the Lichtenstein case and now hold that a party acting in bad faith is not entitled to assert the defenses of LSA-R.S. 10:4-406. However, Graham's petition does not state what specific conduct by Pioneer would constitute bad faith. The only allegations asserted are that Pioneer acted in a commercially unreasonable and negligent manner. LSA-C.C.P. Art. 934 provides in pertinent part:
Art. 934. Effect of sustaining peremptory exception
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
Since Pioneer would not be allowed to assert the exception of prescription under Section 4-406(4) if Graham could prove Pioneer acted in bad faith, Graham must be allowed the opportunity to amend his petition to set forth specific allegations of bad faith as would remove the grounds of the exception. Of course, if Graham does not comply with the order to amend, the action shall be dismissed with prejudice.

CONCLUSION
The trial court's judgment is affirmed insofar as it sustained the exception of prescription and dismissed Graham's original petition. The judgment is amended, however, to make the dismissal without prejudice and to allow Graham fifteen days from the date of rendition of this judgment to amend his petition *1093 in the trial court. In default of such an amendment, Graham's claim shall be dismissed with prejudice. We remand this matter to the trial court for further proceedings consistent with this opinion. Costs of the appeal are assessed one-half to Graham and one-half to Pioneer.
AMENDED AND AFFIRMED; CASE REMANDED.
NOTES
[1] Strother, as a representative of other companies, had done business with Graham prior to the fraudulent investment scheme that forms the basis for this lawsuit.
[2] On July 27, 1992, Graham filed suit in federal court against Union Fidelity, a bonding company for FSC Securities Corporation. In that suit, Graham sought to recover the same funds that are the subject of this lawsuit.
[3] LSA-R.S. 10:4-207(4) states in pertinent part:

Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making the claim.
The statute was amended effective January 1, 1994 and the above subsection was deleted. We address the statute as it existed prior to the amendment.
[4] LSA-R.S. 10:406 was also amended effective January 1, 1994 and no longer includes subsection (4) and (5). We address the statute as it existed prior to the amendment.
[5] The California statute provides for a one-year prescriptive period whereas LSA-R.S. 10:4-406 provides for a three-year prescriptive period. See Cal.Com.Code § 4-406.