RALPH FALK II, Plaintiff-Appellant, v. NORTHERN TRUST COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—00—2958

Opinion filed December 31, 2001.

CERDA, J., dissenting.

Michael J. O'Rourke and Richard F. Linden, both of O'Rourke, McCloskey & Moody, of Chicago, for appellant.

Sarah R. Wolff and Matthew J. O'Hara, both of Sachnoff & Weaver, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE HALL delivered the opinion of the court:

The plaintiff, Ralph Falk II, filed a multicount complaint against the defendant, The Northern Trust Company (the Bank), seeking damages and an accounting based upon the Bank's failure to investigate and alert the plaintiff to fraudulent transactions involving his accounts with the Bank.

The trial court granted the Bank's motion to dismiss the plaintiff's second amended complaint, finding that the plaintiff's action was time-barred under section 4—406(f) of the Uniform Commercial Code—Bank Deposits and Collections (UCC) (810 ILCS 5/4—406(f) (West 1992). The plaintiff filed a timely notice of appeal.

On March 27, 2000, the plaintiff filed his second amended complaint. In his complaint, the plaintiff alleged the following facts.

For over 13 years, the plaintiff employed Patricia Podmokly as his personal assistant. Her duties for the plaintiff included paying his personal bills, handling his bookkeeping, reporting to his accountants, and communicating with his investment advisors. In 1984, in order to carry out her duties, Ms. Podmokly was made a signatory on the plaintiff's demand accounts at the Bank. Ms. Podmokly held a position of a fiduciary with respect to the plaintiff, a fact which was known to the Bank.

In 1993, Ms. Podmokly began misappropriating funds from the plaintiff's accounts at the Bank for her own personal benefit. The misappropriation included drawing large amounts from the plaintiff's accounts through checks payable to cash which Ms. Podmokly used to pay her personal obligations, such as loans she had at the Bank and

obligations of her business associates and friends at the Bank. Between 1993 and 1997, Ms. Podmokly misappropriated over $2 million of the plaintiff's funds.

According to the plaintiff, the Bank ignored clear evidence of Ms. Podmokly's misappropriation of his funds and allowed her to continue her misappropriations well into 1997.

The plaintiff alleged that the Bank was placed on notice of Ms. Podmokly's misappropriation of the plaintiff's funds by the number of changes and irregularities in the plaintiff's account activity at the Bank, beginning in 1993 and continuing into 1997. In addition, in 1995, the Bank accepted an unsigned $2,000 check drawn on the plaintiff's account for payment of Ms. Podmokly's personal equity credit line at the Bank.

The Bank was also placed on notice of Ms. Podmokly's misappropriations, since she maintained her own accounts at the Bank, including her mortgage and equity line of credit. Because the Bank made loans to her and, in connection with those loans, reviewed her tax returns and other personal information, the Bank was aware that her income was insufficient to support the account and loan activity she was generating.

In his second amended complaint, the plaintiff requested an accounting and alleged causes of action against the Bank in negligence; under the Fiduciary Obligations Act (the Act) (760 ILCS 65/7, 8 (West 1992)); and under the UCC—Negotiable Instruments (810 ILCS 5/3—101 et seq. (West 1992)).

On May 5, 2000, the Bank filed a motion to dismiss pursuant to section 2—619.1 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619.1 (West 1998)). The Bank maintained, inter alia, that the second amended complaint should be dismissed in its entirety, pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—219(a)(9) (West 1998)), because the plaintiff's claims are barred under the provisions of section 4—406(f) of the UCC (810 ILCS 5/4—406(f) (West 1998)), which required him to notify the Bank within one year after receiving his bank statement of any unauthorized signature or alteration or be precluded from bringing an action against the Bank based on those facts.

On May 24, 2000, the plaintiff filed his response to the Bank's motion to dismiss. The plaintiff argued that section 4—406(f) was inapplicable to his claim against the Bank because section 4—406(f) did not apply to claims based upon "actual knowledge" or "bad faith" on the part of the Bank.

On July 26, 2000, the trial court entered an order dismissing the plaintiff's second amended complaint with prejudice based upon the

plaintiff's failure to comply with section 4—406(f) of the UCC. On August 15, 2000, the plaintiff filed a timely notice of appeal.

## ANALYSIS

The sole issue on appeal is whether section 4—406(f) bars the plaintiff's second amended complaint.

### I. Standard of Review

■ Section 2—619.1 of the Code permits a party to bring a combined motion for dismissal pursuant to sections 2—615 and 2—619 as a single motion, provided that the combined motion presents the bases for dismissal separately. In this case, the trial court granted that part of the motion to dismiss based upon section 2—619 of the Code. Motions to dismiss under section 2—619 of the Code are reviewed *de novo*. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145, 150 (2000).

■ For purposes of considering a section 2—619 motion, reviewing courts treat all well-pleaded facts and reasonable inferences that can be drawn from the complaint as true. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 164-65, 700 N.E.2d 1064, 1070 (1998). Section 2—619(a)(9) of the Code, the specific provision relied upon by the Bank in this case, provides for involuntary dismissal of a cause of action where the claim asserted is barred by " 'affirmative matter' " avoiding the legal effect of or defeating the claim. *Lykowski*, 299 Ill. App. 3d at 165, 700 N.E.2d at 1070, quoting 735 ILCS 5/2—619(a)(9) (West 1996). The reference to " 'affirmative matter' " is said to be something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Lykowski*, 299 Ill. App. 3d at 165, 700 N.E.2d at 1070. Under section 2—619, a motion to dismiss should be granted if, after construing the pleadings and the supporting documents in the light most favorable to the nonmoving party, the trial court finds that no set of facts can be proved upon which relief could be granted. *Owens*, 316 Ill. App. 3d at 344, 736 N.E.2d at 150.

### II. Statutory Authority

Prior to January 1, 1992, section 4—406 of the UCC provided that when a bank sent a statement to a customer accompanied by items paid in "good faith," the customer must exercise reasonable care and promptness to examine the statement and promptly notify the bank of an unauthorized signature or alteration. Ill. Rev. Stat. 1989, ch. 26, par. 4—406(1). Section 4—406 further provided that a customer had one year from the time the statement and items were made available

to him to report his unauthorized signature or alteration, or he was precluded from asserting the unauthorized signature or alteration against the bank, regardless of the care or lack of care on the part of either the bank or the customer. A customer had three years to report an unauthorized endorsement. Ill. Rev. Stat. 1989, ch. 26, par. 4—406(4).

■ In 1992, section 4—406 was amended and renumbered. Section 4—406(1) became section 4—406(a). Sections 4—406(a) and 4—406(b) now provided that in order for banks to impose on their customers the duty to examine their statements and report unauthorized signatures or alterations, the statement that the Bank sends to its customer must contain sufficient information to allow the customer to identify the items paid, and that the bank must retain items or copies thereof for seven years. 810 ILCS 5/4—406(a), (b) (West 1992); 810 ILCS Ann. 5/4—406, Uniform Commercial Code Comment, at 419 (Smith-Hurd 1992).

Eliminated from section 4—406(a) was the requirement contained in section 4—406(1) that the items be paid in "good faith." Section 4—406 goes on to provide that the customer is precluded from asserting the customer's unauthorized signature or any alteration of an item if the customer failed to examine the bank statement with reasonable promptness. 810 ILCS 5/4—406(c), (d) (West 1992). The "preclusion" is treated differently depending upon the bank's conduct. If the bank "failed to exercise ordinary care" in paying the item, then the customer and the bank share the loss. However, if the customer proves that the bank did not pay the item in "good faith," the preclusion under subsection (d) does not apply. See 810 ILCS 5/4—406(e) (West 1992).

Finally, section 4—406(f) provides as follows:

"Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under Section 4—208 with respect to the unauthorized signature or alteration to which the preclusion applies." Pub. Act 87—1135, § 1 eff. September 17, 1992 (amending 810 ILCS 5/4—406(f) (West 1992)).

### III. Discussion

Whether the time limitation set forth in section 4—406(f) bars an action against a bank where the bank is alleged to have paid items in bad faith is a case of first impression in Illinois.

Prior to the 1992 amendments to section 4—406, the Court of Appeals for the Seventh Circuit held that where the plaintiff alleged that the bank acted in bad faith in allowing the plaintiff's fiduciary to cash checks and make withdrawals from her accounts with forged endorsements or no endorsements at all, the time limitation in section 4—406(4) did not apply because section 4—406(1) required that the bank pay the items in "good faith." See *Appley v. West*, 832 F.2d 1021, 1032 (7th Cir. 1987).

The Bank maintains that the decision in *Appley* is not controlling because the 1992 amendments to section 4—406 eliminated the requirement in section 4—406(1) that the items be paid in "good faith" by the bank. See Pub. Act 87—1135, § 1, eff. September 17, 1992 (amending 810 ILCS 5/4—406 (West 1992)). The Bank also maintains that the decision in *Appley* has no precedential value in light of this court's decision in *Euro Motors, Inc. v. Southwest Financial Bank & Trust Co.*, 297 Ill. App. 3d 246, 696 N.E.2d 711 (1998)

In *Euro Motors, Inc.*, the plaintiff's checking account required two signatures for any check drawn over $30,000. In 1994, Southwest paid two checks over $30,000, both with only the signature of the plaintiff's president. The president was removed in 1995. In 1996, the plaintiff sued Southwest for breach of contract and conversion seeking to recover the face value of the checks. Southwest moved for summary judgment alleging, *inter alia*, that the plaintiff had not timely notified it of the unauthorized signatures and, therefore, section 4—406(f) barred the plaintiff's suit. The trial court granted summary judgment, and the plaintiff appealed.

This court held that the plaintiff's suit was time-barred by section 4—406(f). This court first found that section 4—406(f) was not a statute of limitations, but a statutory prerequisite of notice and therefore not subject to the discovery rule. We then determined that the provisions of section 4—406(f) evidenced a public policy in favor of imposing on customers the duty of prompt examination of their bank accounts and the notification to banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged, altered or unauthorized items. *Euro Motors, Inc.*, 297 Ill. App. 3d at 253, 696 N.E.2d at 716. This court then stated as follows:

> "Both the breach of contract claim and the conversion claim asserted in Euro Motors' complaint are time-barred by section 4—406(f). This provision bars any untimely claims, whether under the UCC or under common law. [Citation.] The time limit imposed by UCC section 4—406 is applicable without regard to the theory

on which the customer brings his or her action. [Citations.] Moreover, the commercial certainty doctrine and the purposes of the UCC are compelling regardless of the theory underlying the lawsuit." *Euro Motors, Inc.*, 297 Ill. App. 3d at 254, 696 N.E.2d at 716.

The present case is more akin to *Appley* than to *Euro Motors, Inc.*, since the latter case did not deal with the issue of bad faith on the part of Southwest in paying the checks in question. While *Appley* is a federal case and decisions of the federal court are not binding on this court (see *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 273, 711 N.E.2d 1194, 1198 (1999)), a federal court's interpretation of Illinois law is persuasive unless it runs contrary to previously decided state cases which, if correctly reasoned, will not be overturned. *In re Consolidated Objections to Tax Levies of School District No. 205*, 306 Ill. App. 3d 1104, 1113, 715 N.E.2d 1212, 1217 (1999).

In addition, the court in *Euro Motors, Inc.* did not address the decision in *Appley*, which further compels the decision that *Euro Motors, Inc.* did not encompass the scenario in which a bank acted in bad faith by paying an item. In fact, using the reasoning of the court in *Euro Motors, Inc.*, regardless of the type of suit brought, the public policy behind placing the burden of discovering an authorized signature or alteration on the customer is hardly served where the bank is an active or passive partner in the scheme to defraud the customer.

Therefore, we conclude that *Euro Motors, Inc.* does not control the result in this case. We must now examine the statute to determine if the 1992 amendments require a result different than the one reached in *Appley*.

■ In interpreting a statute, the primary rule of statutory construction to which all other rules are subordinate is to ascertain and give effect to the true intent and meaning of the legislature. *Village of Cary v. Trout Valley Ass'n*, 282 Ill. App. 3d 165, 169, 667 N.E.2d 1082, 1085 (1996). In order to determine the legislative intent, courts must read the statute as a whole, all relevant parts must be considered, and each section should be construed in connection with every other section. *Village of Cary*, 282 Ill. App. 3d at 169, 667 N.E.2d at 1085. Courts should look to the language of the statute as the best indication of legislative intent, giving the terms of the statute their ordinary meaning. *Village of Cary*, 282 Ill. App. 3d at 169, 667 N.E.2d at 1085. Where the statutory language is clear, courts should give effect to the statute as enacted without considering extrinsic aids for construction. *Village of Cary*, 282 Ill. App. 3d at 169, 667 N.E.2d at 1085.

■ Our own examination of section 4—406, as amended, in its entirety convinces us that section 4—406(f) does not bar suits brought

beyond the time limitation set forth in that section, where the customer alleges that the bank acted in "bad faith" in paying the items that are the subject of the suit.

As we previously noted, while prior to the 1992 amendments, section 4—406(1) required the bank to have paid the items in "good faith" before the time limitation in section 4—406(4) would run, the 1992 amendments eliminated the term "good faith" from section 4—406(a), section 4—406(1)'s amended counterpart. However, while prior to the 1992 amendments, section 4—406(3) provided that the customer was not precluded from asserting against the bank an unauthorized signature or alteration if the customer could establish that the bank did not use "ordinary care," its amended counterpart, section 4—406(e), requires the bank and the customer to share the loss where the customer establishes that the bank did not use "ordinary care" in paying the item. In addition, section 4—406(e) now allows a customer to avoid preclusion entirely, if the customer can prove that the bank did not pay the item in "good faith." 810 ILCS 5/4—406(e) (West 1992).

Finally, under amended section 4—406(f), the bank escapes liability regardless of the "care" or lack thereof exercised by it or the customer, if the unauthorized signature or alteration is not reported to the bank within one year of the customer's receipt of the statement from the bank. Unlike section 4—406(e), however, section 4—406(f) does not refer to "good faith."

We believe that the legislature's use of the term "care" in section 4—406(f) cannot be read to include "good faith." The fact that, in other parts of section 4—406, the legislature drew a distinction between "ordinary care" and "good faith" in describing the consequences suffered clearly indicates that the legislature did not intend to limit a bank's liability when it acted in "bad faith" as opposed to acting with a lack of care when paying an item.

In addition, we agree with the plaintiff that under the UCC every contract or duty contains an obligation of "good faith" in its performance or enforcement, and, therefore, the Bank was required to pay the items in "good faith." See 810 ILCS 5/1—203 (West 1992). The Bank points out that in *Halifax Corp. v. Wachovia Bank, N.A.*, 41 UCC Rep. Serv. 2d 897 (2000), the circuit court rejected the argument that section 1—203 of the UCC applied to section 4—406(f) because section 4—406(f) was a statute of limitations and did not involve a contract or duty. *Halifax Corp.*, 41 UCC Rep. Serv. 2d at 900-02. In *Euro Motors, Inc.*, this court rejected the argument that section 4—406(f) was a statute of limitations, finding instead that it was a statutory prerequisite of notice. *Euro Motors, Inc.*, 297 Ill. App. 3d at 253, 696 N.E.2d at 716.

The Bank argues that had the drafters of section 4—406(f) intended to impose a "good faith" condition, they could have done so as they did in section 4—406(e). See *Halifax Corp.*, 41 UCC Rep. Serv. 2d at 901. The Bank further argues that the cases relied on by the plaintiff, holding that a party who acts in "bad faith" is not entitled to assert the defenses of section 4—406, concerned the pre-amended section 4—406. See *Graham v. Strother*, 684 So. 2d 1088 (La. App. 1996); *Lichenstein v. Kidder, Peabody & Co.*, 777 F. Supp. 423, 423 (W.D. Pa. 1991). It should be noted that the opinion in *Lichenstein*, which was followed by the court in *Graham*, cited the "good faith" requirement of section 1—203 of the UCC as the basis for its decision. *Lichenstein*, 777 F. Supp. at 426-27; *Graham*, 684 So. 2d at 1092.

The Bank relies on *Henrichs v. Peoples Bank*, 26 Kan. App. 2d 582, 992 P.2d 1241 (1999), as holding that "good faith" does not apply to section 4—406(f). In that case, the plaintiff alleged that section 4—406 did not apply because the bank had actual knowledge of the misappropriation of funds. However, the reviewing court upheld summary judgment for the bank on the basis that the plaintiff had produced no evidence to support her contention of actual knowledge and that the statute indicated that a lack of care was not a consideration. *Henrichs*, 26 Kan. App. 2d at 584, 992 P. 2d at 1243. However, the case did not specifically address the issue of "good faith" and no issue as to section 1—203 was raised therein. Therefore, we are not persuaded by the decision in *Henrichs*.

In summary, we conclude that section 4—406(f) requires that a bank act in "good faith" when paying the items on the statement in order to claim the protection of the prerequisite of notice requirement contained in that section. As we stated previously, the public policy behind placing the burden on the customer to determine unauthorized signatures or alterations is not served when the bank is a party, either actively or passively, to a scheme to defraud the customer.

■ However, a plaintiff may not avoid dismissal by merely reciting the words "actual knowledge" and "bad faith." *County of Macon v. Edgcomb*, 274 Ill. App. 3d 432, 438, 654 N.E.2d 598, 602 (1995). We must determine whether, taking all well-pleaded facts and reasonable inferences as true, the plaintiff has set forth sufficient facts to support his claim that the Bank acted in "bad faith."

In this case, the plaintiff alleged that the Bank was placed on notice of Ms. Podmokly's misappropriations from his accounts at the Bank based upon certain facts, such as the increased activity in his accounts during Ms. Podmokly's tenure as his personal assistant along with specific transactions, and that the Bank's failure to take action upon such notice amounted to "bad faith."

■ Section 3—307 of the UCC provides in pertinent part as follows:

"(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

\* \* \*

(4) If the instrument is issued by the represented person or the fiduciary, as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is *(i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.*" (Emphasis added.) 810 ILCS 5/3—307(b)(4) (West 1992).

The second amended complaint alleged that the Bank had actual knowledge of the fiduciary relationship between Ms. Podmokly and the plaintiff. It further alleged that the Bank had accepted checks drawn by Ms. Podmokly on the plaintiff's account for payment of her loans at the Bank, for payment on her personal equity credit line at the Bank and for deposit into her own personal account at the Bank.

■ Based upon the above allegations, the Bank was on notice that Ms. Podmokly was acting in breach of her fiduciary duties to the plaintiff. Given the number of years and the numerous transactions alleged by the plaintiff, the Bank's failure to investigate in light of its knowledge of the breach of fiduciary duty constitutes more than a lack of care for which it would be protected by section 4—406(f). See *Edgcomb*, 274 Ill. App. 3d at 436, 654 N.E.2d at 601 (an example of bad faith is where the taker suspects that the fiduciary is acting improperly and deliberately refrains from investigating in order that he may avoid knowledge that the fiduciary is acting improperly). As the court stated in *Appley*:

"In determining whether the bank acted with bad faith, 'courts have asked whether it was commercially unjustifiable for the payee to disregard and refuse to learn facts readily available.' [Citation.] 'At some point, obvious circumstances become so cogent that it is "bad faith" to remain passive.' [Citation.]" *Appley*, 832 F.2d at 1031.[1]

We conclude that the plaintiff has set forth sufficient facts to es-

[1]In *National Union Fire Insurance Co. of Pittsburg v. First National Bank*

tablish that the Bank acted in bad faith rather than with a lack of care when it permitted Ms. Podmokly's check writing activities to continue without conducting an investigation in light of the fact that it was on notice that she was in breach of her fiduciary duties to the plaintiff.

The judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

WOLFSON, J., concurs.

JUSTICE CERDA, dissenting:

I respectfully dissent. I believe that one should read section 4—406 as a whole, considering all relevant parts in connection with every other section. Section 4—406(f) states as follows:

"Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (sub-section (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration." Pub. Act 87—1135, § 1, eff. September 17, 1992 (amending 810 ILCS 5/4—406(f) (West 1992)).

I believe that the legislature could have inserted "good faith" if it had wanted to do so. Since "good faith" was not included in section 4—406(f), I do not believe that we can require the bank to pay the items in "good faith" in order for the one-year period to apply.

I agree with the statement in *Euro Motors, Inc. v. Southwest Financial Bank & Trust Co.*, 297 Ill. App. 3d 246, 696 N.E.2d 711 (1998), which stated:

"We agree with the majority of jurisdictions that section 4—406(f) is a rule of substantive law that creates a statutory prerequisite to filing suit. Failure to 'discover and report' an unauthorized signature within one year from the time the bank makes

---

*of Des Plaines*, 90 C 6851 (N.D. Ill. 1991), the district court held that the plaintiff had alleged bad faith by pleading that the bank had failed to exercise ordinary care and utilize reasonable commercial practices, which, it could be argued, would permit the Bank in this case to invoke the protections of section 4—406(f). However, that case predated the 1992 amendments to section 3—307 which set forth certain conditions that placed a bank on notice of a breach of fiduciary duty. In the case at bar, it is the knowledge of the breach of fiduciary duty coupled with the Bank's failure to investigate that raises the Bank's conduct from a mere lack of care to acting in bad faith.

available to the customer a statement of account and accompanying items precludes the customer's assertion of a claim against the bank." *Euro Motors*, 297 Ill. App. 3d at 253.

In this case, the plaintiff did not discover and report unauthorized actions by Ms. Podmokly to the Bank within the one-year period; therefore, he is precluded from making any claim against the Bank in this case. That includes claims of "bad faith" or lack of "good faith" in paying the unauthorized checks. The burden falls on the customer to examine the bank statements. I would affirm.