Elisa Simmons Pinigis, as executrix of the estate of Doris Porter Coyle, deceased, appeals from a summary judgment for Regions Bank ("the Bank") in her action against the Bank for its payment of allegedly unauthorized checks drawn on Coyle's account. We affirm.
This is Pinigis's second appeal from a summary judgment in favor of the Bank. See Pinigis v. Regions Bank,942 So.2d 841 (Ala. 2006) ("Pinigis I"). The facts underlying this dispute are fully developed in that case and will not be repeated here. In Pinigis I, we reversed a partial summary judgment for the Bank, which had been granted on the ground that "the Bank `was not given any specific notification of the unauthorized signatures on checks until the instant lawsuit was filed . . . almost nine months after the last unauthorized check was written.'" 942 So.2d at 844. Applying Ala. Code 1975, § 7-4-406(f), the trial court had held that "Pinigis could not `hold the [B]ank liable for checks paid by the [B]ank more than 180 days prior to discovery and reporting.'" 942 So.2d at 844. Section 7-4-406 provides:
 "(a) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment.
 "(b) If the items are not returned to the customer, the person retaining the items shall either retain the items or, if the items are destroyed, maintain the capacity to furnish legible copies of the items until the expiration of seven years after receipt of the items. A customer may request an item from the bank that paid the item, and that bank must provide in a reasonable time either the item or, if the item has been destroyed or is not otherwise obtainable, a legible copy of the item.
 "(c) If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must *Page 448 
promptly notify the bank of the relevant facts.
 "(d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection (c), the customer is precluded from asserting against the bank:
 "(1) The customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
 "(2) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.
 "(e) If subsection (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection (d) does not apply.
 "(f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within 180 days after the statement and the items or a legible copy or image of the items are sent to the customer, or within one year after the statement or items are otherwise made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are sent or made available to the customer, discover and report any alteration on the back of the item or any unauthorized endorsement is precluded from asserting against the bank any such alteration or unauthorized endorsement. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under Section 7-4-208 with respect to the unauthorized signature or alteration to which the preclusion applies."
(Emphasis added.)
In her first appeal, Pinigis relied in part on the fact that the Bank, in its answer, had asserted that "`[t]he plaintiffs claims are barred by the applicable statutes oflimitations.'" 942 So.2d at 844. She objected to the Bank's reliance on § 7-4-406(f) as a basis for a summary judgment, arguing that the notice provision in § 7-4-406(f) "is not a statute of limitations, but is, in fact, a statute of repose."942 So.2d at 846. She contended that "`[a] statute of repose, such as § 7-4-406(f), is an [affirmative defense],' which the Bank was required to include in its answer, or it was waived."942 So.2d at 844. Thus, because the Bank had described its defense as a statute of limitations, rather than as a statute ofrepose, Pinigis argued, the Bank's answer was insufficient to preserve a defense based on § 7-4-406(f). We agreed with Pinigis that in pleading a statute of limitations, the Bank had not pleaded *Page 449 
a statute of repose, and we reversed the summary judgment on the sole ground that the Bank had waived reliance on Ala. Code 1975, § 7-4-406(f), by failing to plead it in its answer.
Following the release of our opinion in Pinigis I, the Bank was allowed to amend its answer and specifically to plead § 7-4-406(f) as an affirmative defense. It then renewed its summary-judgment motion, asserting, once again, that "the customer's failure to notify the Bank in a timely fashion precludes recovery under Ala. Code § 7-4-406(f)." Again, the trial court granted the Bank's motion, and Pinigis appeals.
In this appeal, Pinigis urges us to adopt a bad-faithexception to the notice requirement of § 7-4-406(f). She contends that a bank customer's failure to satisfy the 180-day notice requirement in § 7-4-406(f) bars an action against the bank to recover funds paid over an "unauthorized signature or alteration" only if the bank paid the checksin good faith. In the words of Pinigis: "Pinigis claims that Regions Bank improperly paid about $250,000 in forged checks and that the loss should fall on the Bank. The Bank asserts the absolute rule of repose defense contained in Ala. Code § 7-4-406(f)." Pinigis's reply brief, at 1 (emphasis added).[1]
"Ordinarily, this Court reviews a summary judgment denovo." Verneuille v. Buchanan Lumber of Mobile, Inc.,914 So.2d 822, 824 (Ala. 2005). In this case, our review is denovo for the additional reason that the dispositive issue is a pure question of law regarding statutory construction.Holsbrooks v. Stacy, 830 So.2d 708, 710 (Ala. 2002). The question is one of first impression in Alabama, and, for that matter, in nearly every other state, which, like Alabama, has adopted some version of the Uniform Commercial Code, § 4-06, as revised in 1990. See generally A. Brooke Overby,Check Fraud in the Courts After the Revisions to U.C.C.Articles 3 and 4, 57 Ala. L.Rev. 351, 351 (2005) ("Forty-eight state legislatures have enacted the 1990 versions of Articles 3 and 4." (footnote omitted)). We begin where we left off in Pinigis I.
In Pinigis I, we explained that § 7-4-406(f) is variously regarded as a "statutory `non-claim provision,'"942 So.2d at 847 (quoting Barkley Clark, The Law of BankDeposits, Collections and Credit Cards ¶ 16.2[3][d], at S6-22 n. 62.2 (Supp. 1987)), or a "`statute of repose.'"Id. (quoting Brian Patrick Perryman, Note,Checking Checks: American Airlines Employees Federal Credit Union v. Martin and the Amenability of Common LawWaiver to Deposit Agreement Cutdown Provisions, 10 Geo. Mason L.Rev. 551, 594 n. 84 (2002)). "While equitable principles may extend the time for commencing an action under statutes of limitation, non-claim statutes impose a condition precedent to the enforcement of a right of action and are not subject to equitable exceptions." Estate of Decker v. FarmCredit Servs. of Mid-America, ACA, 684 N.E.2d 1137, 1139
(Ind. 1997). Similarly, "statutes of repose, unlike statutes of limitations, are not subject to equitable tolling, even under `compelling circumstances.'" Perryman, supra, at 594 n. 86 (quoting Siecinski v. First State Bank of E. Detroit,209 Mich.App. 459, 464, 531 N.W.2d 768, 770 (1995)).
These authorities accurately describe the concept of a rule of repose in Alabama. The general 20-year rule of *Page 450 
repose, for example, "is based solely upon the passage of time," and is "`not affected by thecircumstances of the situation, by personal disabilities, or bywhether prejudice has resulted or evidence obscured,'" nor is it "based upon concepts of accrual, notice, or discovery."Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758,764 (Ala. 2002) (quoting Boshell v. Keith,418 So.2d 89, 91 (Ala. 1982) (emphasis added in Ex parte Liberty Nat'lLife Ins. Co.)).[2] The rule is an "absolutebar to unasserted claims." Boshell,418 So.2d at 92 (some emphasis added; some emphasis omitted). Similarly, we pointed out in Pinigis I that the rule of repose in § 7-4-406(f) is "`absolute,'" and that noncompliance "`bar[s]'" actions to recover payments over "`unauthorized signatures or alterations.'" 942 So.2d at 847
(quoting the Alabama Comment to § 7-4-406(f)) (emphasis inPinigis I).
It is abundantly clear that subsection (f) contains no provision expressly excusing failure to notify a drawee bank of "unauthorized signatures or alterations," comparable to those provisions in subsections (d)(2) and (e), because of the lack of good faith on the part of the bank. Instead, it says, in pertinent part:
 "Without regard to care or lack of care of either the customer or the bank, a customer who does not within 180 days after the statement and the items or a legible copy or image of the items are sent to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration."
(Emphasis added.)
Pinigis concedes that the emphasized portions of this subsection render a bank's negligence irrelevant after 180 days. She argues, however, that because subsection (f) does not also expressly make good faith irrelevant to recovery, it contains implicitly what subsections (d)(2) and (e) contain expressly, that is, a provision relieving dilatory customers of the consequences of failure to comply with the duty imposed in subsection (c) promptly to notify the bank of unauthorized payments, if those payments were not made by the bank in good faith. In other words, she argues that the legislature did not intend to include within the rule of repose of § 7-4-406(f) payments made by the bank in the absence of good faith. According to Pinigis, her argument is supported by legislative history, and she urges us to compare the current version of § 7-4-406 with an earlier version, especially in light of sections generally importing a duty of good faith into transactions governed by the Uniform Commercial Code ("UCC"). See Ala. Code 1975, § 7-1-304 ("Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement."); Ala. Code 1975, 7-4-103(a) ("The effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure.").
We note that "[t]he intent of the Legislature is the polestar of statutory construction." Siegelman v. Alabama Ass'n ofSchool Bds., 819 So.2d 568, 579 (Ala. 2001). See alsoRichardson v. PSB Armor, Inc., 682 So.2d 438, 440
(Ala. 1996); Jones v. Conradi, 673 So.2d 389, 394
(Ala. 1995); Ex parte Jordan, 592 So.2d 579, 581 (Ala. 1992). *Page 451 
"[T]he starting point for all statutory interpretation is the language of the statute itself," and "[i]f the statutory language is clear, no further inquiry is appropriate." Federal Reserve Bank of Atlanta v.Thomas, 220 F.3d 1235, 1239 (11th Cir. 2000). "If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine [legislative] intent." Id. It is also true that "[i]n attempting to ascertain the legislative intent of a particular statute or provision therein, it is permissible to look to the law as it existed prior to such statute's enactment." Reeder v. State ex rel. Myers,294 Ala. 260, 265, 314 So.2d 853, 857 (1975). In that connection, "courts [also] consider contemporaneous events
surrounding enactment of the statute." Baylor v. New JerseyDep't of Human Servs., Div. of Pub. Welfare, 235 N.J.Super. 22, 41, 561 A.2d 618, 628 (1989), aff'd,127 N.J. 286, 604 A.2d 110 (1990) (emphasis added). We cannot say that § 7-4-406 is clear on its face. However, the legislative history of the statute does not aid Pinigis.
The predecessor of § 7-4-406 was Alabama's version of UCC § 4-406 as it existed prior to the revision of articles 3 and 4 of the UCC in 1990. Former § 7-4-406 provided, in pertinent part:
 "(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.
 "(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:
 "(a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and
 "(b) An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.
 "(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).
 "(4) Without regard to care of lack of care of either the customer or the bank (a) a customer who does not within 180 days from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face of the item is precluded from asserting against the bank such unauthorized signature or alteration. . . ."
(Emphasis added.)
Significantly, unlike current § 7-4-406, the former section contained a good-faith prefatory clause in the firstsubsection: "When a bank sends to its customer a statement of account accompanied by items paid in good faith
. . ., the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration . . . and must notify the *Page 452 
bank promptly after discovery thereof." It was widely understood that by making good faith prefatory in thefirst subsection, the drafters of § 4-406 had unambiguously made good-faith payment a condition precedent to the notice requirements throughout the section, including subsection (4). For example, it was stated:
 "If an unauthorized signature is not reported by the customer within one year from the time the statement and item are made available to the customer, § 4-406(4) precludes the customer from having the account recredited, irrespective of the bank's own negligence in paying the item. However, § 4-406(1) imposes a general duty of notification on the customer only if the bank pays the item `in good faith.' Thus, if the customer can prove that the bank debited its account in bad faith, the one-year limit will not act as a bar."
Clark, The Law of Bank Deposits, Collections and CreditCards ¶ 8.02[4][d] (emphasis added). See alsoAppley v. West, 832 F.2d 1021, 1032 (7th Cir. 1987) (allegation of bad faith prevented the application of § 4-406(4), because § 4-406(1) "require[d] that the items must have been `paid in good faith' for the period of limitation to run"); Kiernan v. Union Bank, 55 Cal.App.3d 111, 114, 127 Cal.Rptr. 441, 443 (1976) (the limitation period in § 4-406(4) does not begin to run unless the items have been "`paid in good faith,'" pursuant to § 4-406(1)); La Sara Grain Co. v. First Nat'l Bank ofMercedes, 673 S.W.2d 558, 562 (Tex. 1984) (the time limitations in § 4-406 "apply only to items paid in good faith," pursuant to the first subsection); Halifax Corp. v.First Union Nat'l Bank, 262 Va. 91, 546 S.E.2d 696 (2001).
It is well settled that when the legislature makes a "material change in the language of [an] original act," it is "presumed to indicate a change in legal rights." 1A Norman J. Singer,Statutes and Statutory Construction § 22:30 (6th ed. 2002) (footnote omitted). In other words, the "amendment of an unambiguous statute indicates an intention to change thelaw." Id. (emphasis added). See State v. Lammie,164 Ariz. 377, 379, 793 P.2d 134, 136 (Ariz.Ct.App. 1990) ("when the legislature amends statutory language, it is presumed that it intends to make a change in existing law"); Matter ofStein, 131 A.D.2d 68, 72, 520 N.Y.S.2d 157, 159
(App.Div. 1987) ("When the Legislature amends a statute, it is presumed that the amendment was made to effect some purpose and make some change in the existing law. . . . By enacting an amendment of a statute and changing the language thereof, the Legislature is deemed to have intended a material change in the law. . . . Moreover, a statute will not be held to be a mere reenactment of a prior statute if any other reasonable interpretation is attainable. . . ."), appealdismissed 72 N.Y.2d 840, 530 N.Y.S.2d 555, 526 N.E.2d 46
(1988).
Thus, it is presumed that the legislature, by removing the good-faith preface from subsection (a) when it enacted the current § 7-4-406, intended to effect a "change in legal rights." Norman J. Singer, supra. The omission, coupled with the absence of any reference to good faith in subsection (f), indicates that the legislature did not intend to except a payment by a bank made in the absence of good faith from the rule of repose contained in subsection (f). Indeed, inHalifax Corp., supra, the only other court of last resort that has discussed the effect of the omission of the good-faith preface, the Virginia Supreme Court — construing § 8.4-406 of Virginia's Uniform Commercial Code — found the omission to be intentional and significant, and held that the Virginia "General Assembly did not intend to impose [the good-faith] requirement upon a bank which asserted that a customer was precluded from *Page 453 
recovering against it because the customer failed to discover and report an unauthorized signature or alteration on an item within the [period prescribed by subsection (f)]."262 Va. at 102, 546 S.E.2d at 703.
In so holding, the Court expressly rejected many of the same arguments Pinigis makes in this case. Regarding § 8.4-406, which differs in no meaningful respect from § 7-4-406, the Virginia Supreme Court stated:
 "When analyzing a statute, we must assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute. . . . Additionally, when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional. . . .
 "Code § 8.4-406 imposes certain duties upon bank customers to discover and report unauthorized signatures or alterations. Code § 8.4-406(a) provides that a bank which elects to send or make available to a customer a statement of account showing payment of items for the account must provide certain information to the customer.
 "Code § 8.4-406(c) imposes a duty upon a customer to exercise reasonable promptness to examine the bank statement or items to determine whether any payment was not authorized because of an alteration or unauthorized signature. Code § 8.4-406(c) also imposes a duty upon the customer to promptly notify the bank of the relevant facts. Code § 8.4-406(c) does not limit the scope of the customer's duty to those items that the bank paid in good faith.
 "By contrast, subsection 1 of the former version of Code § 8.4-406 also imposed a duty upon bank customers to examine their bank statements and report any alterations or unauthorized signatures. However, the duty imposed upon bank customers by former Code § 8.4-406 applied only with respect to items paid in good faith by the bank. The former Code provision stated: `When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries . . . the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.'
 "Current Code § 8.4-406(d), which precludes a customer from asserting a claim against a bank for a loss caused by an unauthorized signature or alteration in certain prescribed circumstances, provides that this preclusion does not apply if the bank failed to pay an item in good faith. Code § 8.4-406(d) explicitly limits the preclusion to items `paid in good faith by the bank.' Additionally, the General Assembly also expressly used the phrase `good faith' in Code § 8.4-406(e). This provision states in relevant part: `If the customer proves that the bank did not pay an item in good faith, the preclusion under subsection (d) does not apply.'
 "Code § 8.4-406(f) bars a customer, who received a statement or item from a bank but failed to discover or report the customer's unauthorized signature or alteration on the item to the bank within one year after the statement or item is made available to the customer, from asserting a claim against the bank for the unauthorized signature or alteration. The customer's compliance with this one-year statutory notice provision is a condition precedent to the customer's *Page 454 
 right to file an action against the bank to recover losses caused by the unauthorized signature or alteration. Code § 8.4-406(f) is devoid of any language which limits the customer's duty to discover and report unauthorized signatures and alterations to items paid in good faith by the bank. The absence of the phrase, `good faith,' in the language chosen by the General Assembly compels this Court to conclude that a bank's statutory right to assert a customer's failure to give the statutorily prescribed notice is not predicated upon whether the bank exercised good faith in paying the item which contained the unauthorized signature or alteration. If the General Assembly had intended to limit the preclusion contained in Code § 8.4-406(f) to items paid in good faith, the General Assembly would have done so explicitly. See Allstate Insurance Co. v. Eaton, 248 Va. 426, 430, 448 S.E.2d 652, 655
(1994)."
262 Va. at 100-01, 546 S.E.2d at 702-03 (some emphasis in original; some emphasis added).
We find the reasoning of the Virginia Supreme Court inHalifax Corp. to be sound and fully in accord with our own view of § 7-4-406, Ala. Code 1975. In that connection, we disagree with Falk v. Northern Trust Co.,327 Ill.App.3d 101, 763 N.E.2d 380, 261 Ill.Dec. 410 (2001). InFalk, two Justices of the Illinois Court of Appeals — over a cogent dissent — held that a bank customer's failure to comply with the notice provisions in the Illinois version of § 4-AUG(f) did not bar an action against the bank, "where the customer allege[d] that the bank acted in `bad faith' in paying the items that [were] the subject of the suit." 327 Ill.App.3d at 109, 763 N.E.2d at 385,261 Ill.Dec. at 415. The majority in Falk was persuaded chiefly by an argument that a general duty of good faith attaches, pursuant to UCC § 1-203, [3] to all transactions subject to the UCC. 327 Ill. App.3d at 109-10,763 N.E.2d at 386, 261 Ill.Dec. at 416.
Pinigis makes a similar argument based on Alabama's version of that section, namely, Ala. Code 1975, § 7-1-304. That argument was considered and rejected in Halifax Corp., where the Virginia Supreme Court stated:
 "We acknowledge, as Halifax observes, that Code § 8.1-203 provides that every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance. Code § 8.1-203, however, does not require that a bank asserting the preclusion contained in Code § 8.4-406(f) demonstrate that it paid the unauthorized items in good faith.
 "Code § 8.1-203 is a statute of general application whereas Code § 8.4-406 is a statute of specific application. `[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, . . . where they conflict, the latter prevails.' Dodson v. Potomac Mack Sales Service, 241 Va. 89, 94-95, 400 S.E.2d 178, 181 (1991) (quoting Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979)); accord County of Fairfax v. Century Concrete Services, 254 Va. 423, 427, 492 S.E.2d 648, 650 (1997); City of Winchester v. American Woodmark, 250 Va. 451, 460, 464 S.E.2d 148, 153 (1995). Thus, to the extent any conflict exists between Code § 8.1-203 and § 8.4-406(f), we must apply *Page 455 
the statute of specific application, in this instance, Code § 8.4-406(f)."
262 Va. at 102, 546 S.E.2d at 703.
Pinigis makes an additional argument based on Ala. Code 1975,7-4-103(a); that section provides, in pertinent part: "The effect of the provisions of this article may be varied byagreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." (Emphasis added.) However, Pinigis is not aided by this section. This is so, because this case does not involve any such agreement. Also, § 7-4-406(f) does not purport to absolve the Bank of "responsibility for its lack of good faith or," for that matter, "failure to exercise ordinary care." Section 7-4-406(f) is a merely a "statute of repose," and compliance with it is a "`statutory prerequisite to suit.'" Pinigis I,942 So.2d at 848 (quoting Euro Motors, Inc. v. Southwest Fin.Bank Trust Co., 297 Ill.App.3d 246, 254,696 N.E.2d 711, 716, 231 Ill.Dec. 415, 420 (1998)).
Providing such a statute of repose is not synonymous with absolving a bank of "responsibility for its lack of good faith," any more than the 20-year rule of repose is in derogation of general common-law duties of care incumbent on all persons within Alabama. Rules of repose have nothing to do with standards of care. See Freese v. Regions Bank,N.A., 284 Ga.App. 717, 719, 644 S.E.2d 549, 551 (2007) (notice-limitation periods are not to be "confuse[d with] the concept of the bank's ongoing duty" of care). They merely "reflect a legislative decision to extinguish all causes ofaction after passage of an arbitrary period of time."Roller v. Basic Constr. Corp., 238 Va. 321, 329,384 S.E.2d 323, 327 (1989) (emphasis added). Thus, § 7-4-406(f) does not implicate § 7-1-304 or § 7-4-103(a).
Finally, Pinigis relies on a comment to the 1990 revision of UCC § 4-406, which states:
 "Subsection (f) amends former subsection (4) to delete the reference to a three-year period to discover an unauthorized indorsement. Section 4-406 imposes no duty on a customer to discover a forged indorsement. Section 4-111 sets out a statute of limitations allowing a customer a three-year period to seek a credit to an account improperly charged by payment of an item bearing an unauthorized indorsement. The final sentence added to subsection (f) incorporates the substance of former subsection (5).
 "The other modifications are made to conform with current legislative drafting practices, with no intent to change substance."
American Law Institute and National Conference of Commissioners on Uniform State Laws, Reason for 1990Change (Appendix IX.1990 Conforming [To Revised Article 3] and Miscellaneous Amendments to Article 4) (emphasis added). According to Pinigis, "if the drafters of the UCC [had] intended such a drastic change (i.e., to give absolute immunity to banks, even those acting in bad faith), they would have commented on such a change." Pinigis's reply brief, at 5.[4]
"Though the official comments are a valuable aid in construction, they have not been enacted by the legislature and are not necessarily representative of legislative intent."Simmons v. Clemco Indus., *Page 456 368 So.2d 509, 514 (Ala. 1979). Indeed, the view expressed in the UCC comment is at odds with the clear import of the revisions to § 7-4-406 effected by the removal of the prefatory good-faith clause discussed above. The persuasiveness of that comment is further diminished by elsewhere stated comments regarding the purposes of the revisions to UCC articles 3 and 4, and generally inconsistent with the Alabama Comment to § 7-4-406.
The purposes for the revisions to articles 3 and 4 are stated in the "Prefatory Note" to revised UCC article 3:
 "Present Articles 3 and 4, written for a paper-based system, do not adequately address the issues of responsibility and liability as they relate to modern technologies now employed and the procedures required by the current volume of checks. . . .
 ". . . .
 "The revision of Article 3 and Article 4 to update, improve and maintain the viability of it is necessary to accommodate these changing practices and modern technologies, the needs of a rapidly expanding national and international economy, the requirement for more rapid funds availability, and the need for more clarity and certainty.
 "Revised Articles 3 and 4 remove numerous uncertainties that exist in the current provisions and thus reduce risk to the payment system and allow appropriate planning by its users and operators.
 ". . . . The Revision removes impediments to the use of automation, and . . . reduce[s] risks to banks."
(Emphasis added.)
A holding that § 7-4-406(f) contains no bad-faith exception accords perfectly with the stated purposes of the revision of UCC articles 3 and 4 to "remove numerous uncertainties" and "reduce risks to banks." See generally, Kathleen Patchel,Interest Group Politics, Federalism and the Uniform LawsProcess: Some Lessons from the Uniform Commercial Code, 78 Minn. L.Rev. 83 (1993) (discussing the processes and politics involved in the revisions of UCC articles 3 and 4). To read such an exception into the statute would eliminate the "`bright line' certainty which statutes of repose are designed to achieve." Towne v. Robbins, 339 F.Supp.2d 1105, 1117
(D.Or. 2004).
Moreover, the Alabama Comment to § 7-4-406 states, in pertinent part:
 "The notice requirements in subsection (f) are the periods within which the customer must notify the drawee bank of the fraud or be absolutely barred from recovery. These notice requirements are in the nature of a statute of repose for reporting unauthorized signatures or alterations rather than a measure of time which a suit to recredit the account must be brought (a statute of limitations)."
(Emphasis added.) The concept of an "absolute bar" is clearly inconsistent with Pinigis's argument that the application of § 7-4-406(f) ought to beconditioned upon the exercise of good faith by the Bank. Citation to authority is scarcely necessary to establish that the word absolute is synonymous with "unconditional." See Black's Law Dictionary 9 (6th ed. 1990) (the definition of "absolute" includes the words "[c]omplete; perfect; final; without any condition or incumbrance").
In short, Pinigis would have us read a condition into § 7-4-406(f) that does not appear on its face, that is inconsistent with persuasive caselaw and with the legislative history of the statute, and that does not comport with the ordinary function of a rule of repose. This we refuse to do. *Page 457 
Instead, we expressly hold that the 180-day notice requirement in § 7-4-406(f) is an absolute rule of repose, the operation of which is not conditioned upon the exercise of good faith by the drawee bank.
For these reasons, the trial court did not err in entering a summary judgment for the Bank.[5] That judgment is, therefore, affirmed.
AFFIRMED.
COBB, C.J., and SEE, LYONS, STUART, BOLIN, and MURDOCK, JJ., concur.
PARKER, J., concurs in the result.
SMITH, J., recuses herself.
[1] According to Pinigis, she presented substantial evidence indicating that the Bank did not pay the disputed checks on Coyle's account in good faith, and, therefore, she argues, a summary judgment for the Bank was inappropriate.
[2] The "only circumstance that will stay the running of the 20-year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim." Boshell, 418 So.2d at 92 (emphasis added).
[3] Before it was revised and renumbered in 2001 as § 1-304, UCC § 1-203 provided: "Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement."
[4] This argument was also considered and rejected inHalifax Corp., on the ground that the statute was unambiguous, and, therefore, that resort would not be made to official comments. 262 Va. at 99-100,546 S.E.2d at 701-02.
[5] Because we hold that there is no bad-faith exception to the notice requirement in § 7-4-406(f), we do not consider whether Pinigis presented substantial evidence of bad faith on the part of the Bank.