Rel: January 10, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0045
_____

**Russell County et al.**

**v.**

**City of Phenix City and Town of Hurtsboro**

**Appeal from Russell Circuit Court**
**(CV-18-900263)**

PARKER, Chief Justice.

Russell County; the Russell County Commission; the Russell County Commissioners, in their official capacities; and the Russell County Administrator, in her official capacity (collectively referred to as

"the County parties"),[1] appeal from the Russell Circuit Court's summary judgment entered in favor of the City of Phenix City ("Phenix City") and the Town of Hurtsboro ("Hurtsboro") (collectively referred to as "the municipalities").[2] The circuit court entered a judgment declaring that, although the Alabama Terminal Excise Tax Act ("the ATETA"), § 40-17-320 et seq., Ala. Code 1975, which became effective October 1, 2012, repealed Act No. 224, Ala. Acts 1967,[3] it did not repeal a local act relating to Russell County, Act No. 859, Ala. Acts 1969 ("the local law"), even though the local law specifically referenced Act No. 224. Because the ATETA specifically stated that any local legislation governing the distribution of the proceeds of the excise taxes on gasoline remained in

---

[1]The County Commissioners are Peggy Martin, Gentry Lee, Carl Currington, Chance Corbett, Ronnie Reed, Larry Screws, and Cattie Epps; the County Administrator is LeAnn Horne.

[2]Even though the judgment from which the appeal was taken provided only equitable relief, this Court has jurisdiction over this appeal because the amount in controversy is $245,761.51, plus interest. Coprich v. Jones, [Ms. SC-2023-0675, June 21, 2024] ___ So. 3d ___ (Ala. 2024) (providing that, even when the only relief sought is equitable in nature, this Court must determine whether the amount in controversy is $50,000 or more).

[3]Act No. 224 was later codified at §§ 40-17-70, 40-17-73, and 40-17-74, Ala. Code 1975.

force, we affirm the circuit court's judgment declaring that the ATETA did not repeal the local law.

## I. Facts

In its judgment, the circuit court noted that the parties had stipulated to the following facts:

"1.   [Act No. 224] was a general law providing for the 'distribution and use of the proceeds of the excise tax levied on gasoline and other motor fuels by Code of Alabama 1940, Title 51, Chapter 25, Article 5.'

"2.   Section 4 of [Act No. 224] allocated 'fifty-five percent of the net tax proceeds' for highway purposes to be used by the counties and municipalities, referred to as the 'local subdivisions' share.' [§ 40-17-70(7), Ala. Code 1975]; [§ 40-17-73, Ala. Code 1975.] A portion of the local subdivisions' share equal to 25 [percent] of the net tax proceeds was allocated equally among the 67 counties. The entire residue of the amount (i.e. 30 [percent] of the net tax proceeds, less any amount paid pursuant to a contingent appropriation not at issue in this case), was then divided amongst the counties proportionally according to population.

"3.   Section 5 of [Act No. 224] provided that the amounts allocated to each county were to be divided between the county and municipalities in the county, with 10 [percent] allocated among the municipalities proportionally according to population. [§ 40-17-74, Ala. Code 1975.]

"4.   [The local law] was then passed that 'authorized and directed' the governing body of Russell County 'to appropriate and set aside ten percent of the county's share of the state gasoline excise tax provided for by [Act No. 224], to

3

be distributed to the several incorporated municipalities in the county on the basis of the ratio of the population of each municipality to the total population of all municipalities in the county according to the most recent federal decennial census.'

"5.    [The ATETA,] effective October 1, 2012, revised the motor fuel tax collection and enforcement system, and repealed <u>inter alia</u>, … §§ 40-17-[7]0, 40-17-73, and 40-17-74.

"6.    [The ATETA] imposed multiple separate taxes on fuel, including a seven cents ($.07) excise tax, a supplemental five cents ($.05) excise tax, and an additional six cent ($.06) excise tax. [§ 40-17-325(a)(1), Ala Code 1975.]

"7.    [The ATETA] provides that 55 [percent] of the 'net tax proceeds' are 'allocated and appropriated to be used for highway purposes by the counties and municipalities.' § 40-17-359(d), Ala. Code 1975. The 'net tax proceeds' are defined as the 'entire proceeds from the highway gasoline tax, except the proceeds from the supplemental excise tax of five cents ($.05) per gallon and additional six cents ($.06) imposed by subdivision (1) of subsection (a) of Section 40-17-325, less the cost of collection and less any refunds pursuant to the provisions of this article.' [§ 40-17-359(a)(9).]

"8.    Twenty-five percent of the net tax proceeds are to be allocated equally, with the remainder allocated 'on the basis of the ratio of the population of each county to the total population of the state…' [§ 40-17-359(d).]

"9.    Ten percent of the amount allocated to each county 'shall be distributed among the municipalities in the county' according to population, and '[t]he remaining portion of the amount so allocated or apportioned to each county shall be distributed to the county with respect to which the allocation or apportionment is made.' [§ 40-17-359(e)(1).]

"10. [The ATETA] also provides for distribution of revenues of the 'supplemental net tax proceeds,' which represent a portion of the revenues collected from supplemental taxes levied under Section 6 of the [ATETA], now codified at [§ 40-17-325(a)(1)], as follows, in relevant part:

"'The remaining two-fifths of the supplemental net tax proceeds shall be distributed, as provided for distribution of the net tax proceeds, according to subsections (c), (d), and (e). Any local laws or general laws of local application now in effect regarding the distribution of the tax levied by [§] 40-17-325 shall govern the distribution of the amounts allocated or apportioned within every county by this section. The Legislature may by general or local laws prescribe other distributions within counties to local governments.'

"[§ 40-17-359(f).]

"11. From October 1, 2012, until May 24, 2017, Russell County continued to distribute 10 [percent] of its allocation of both the net and supplemental net tax proceeds under § 40-17-325 (ATETA) to the City of Phenix City and the City of Hurtsboro, according to their respective populations.

"12. At the June 14, 2017, Russell County Commission meeting, then-County Attorney Funderburk recommended not making further payments to any municipality in Russell County from the County's allocation of the gasoline tax proceeds. The Russell County Commission unanimously approved this recommendation and has not made any additional distributions to a municipality of the net or supplemental net tax proceeds."

In August 2018, Phenix City commenced an action against Russell County; the County Commissioners, in their official capacities; and the County Administrator, in her official capacity. In the complaint, Phenix City sought (1) a writ of mandamus directing Russell County to pay it 10 percent of the county's share of the proceeds of the excise tax in accordance with the provisions of the local law; (2) a judgment declaring that it was entitled to that 10-percent share; and (3) a permanent injunction requiring the defendants to pay it that 10-percent share. In response, the defendants asserted numerous affirmative defenses. Russell County and the Russell County Commission also asserted a counterclaim seeking a judgment declaring that Phenix City was not entitled to 10 percent of the county's share of the proceeds of the excise tax because, they said, the excise tax had been repealed by the ATETA. They also asserted counterclaims for money had and received and unjust enrichment. Hurtsboro intervened to assert its rights under the local law.

In February 2023, the County parties moved for a partial summary judgment. In that motion, they sought a summary judgment on all of the municipalities' claims against them. They also sought a summary judgment on their counterclaims against the municipalities, with the

amounts in controversy on the claims for money had and received and unjust enrichment to be decided later. Phenix City also moved for a summary judgment in its favor on all claims. On January 10, 2024, after a hearing on the County parties' motion, the circuit court entered a summary judgment on all claims in the municipalities' favor. The County parties appeal.

## II. Standard of Review

> "'An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied. American Gen. Life & Accident Ins. Co. v. Underwood, 886 So. 2d 807, 811 (Ala. 2004). In addition, "[t]his court reviews de novo a trial court's interpretation of a statute, because only a question of law is presented." Scott Bridge Co. v. Wright, 883 So. 2d 1221, 1223 (Ala. 2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review. Carter v. City of Haleyville, 669 So. 2d 812, 815 (Ala. 1995). Here, in reviewing the [entry] of a summary judgment when the facts are undisputed, we review de novo the trial court's interpretation of statutory language and our previous caselaw on a controlling question of law.'"

McKinney v. Nationwide Mut. Fire Ins. Co., 33 So. 3d 1203, 1206-07 (Ala. 2009) (quoting Continental Nat'l Indem. Co. v. Fields, 926 So. 2d 1033, 1034-35 (Ala. 2005)).

### III. Analysis

The County parties present several arguments as to why the circuit court erred in entering a summary judgment for the municipalities. First, they contend that the local law is void because it specifically referenced Act No. 224, which the ATETA repealed. Second, they contend that the circuit court erred in ruling that the ATETA was a continuation of Act No. 224 because the ATETA expressly repealed Act No. 224. Third, they contend that the ATETA repealed the local law by implication. We address each argument in turn.

### A. The local law specifically refers to Act No. 224.

The local law reads as follows: "Russell County is hereby authorized and directed to appropriate and set aside ten percent of the county's share of the state gasoline excise tax provided for by Act No. 224 ...." The County parties contend that the ATETA implicitly repealed the local law because of this specific reference to Act No. 224 and that the local law applies only to the county's share of the proceeds of the Alabama gasoline excise tax, as set forth in the distribution scheme established in Act No. 224.

The County parties' argument rests on the distinction this Court has drawn between specific-reference statutes and general-reference statutes:

> "[A] specific reference statute is one 'where the adopting statute incorporates an earlier statute or a particular provision thereof by a specific and descriptive reference thereto,' e.g. by employing a statutory citation or the specific title to an act. A general reference statute is one which 'refers generally to the law relating to or governing the subject under consideration.' Specific reference statutes 'only incorporate the adopted statutes in existence at the time of the enactment of the adopting statute and do not prospectively include subsequent modifications or additions to the general subject adopted.' General reference statutes, on the other hand, '(include) not only the law in force at the time the adopting act became effective, but also later legislation on the subject.'"

Shelby Cnty. Comm'n v. Smith, 372 So. 2d 1092, 1094 (Ala. 1979) (citations omitted).

The local law referenced two statutory provisions. First, it referenced the "state gasoline excise tax," which includes all statewide excise taxes levied on the sale of gasoline. Second, it referenced Act No. 224, which governed the distribution of the state gasoline excise tax.

Insofar as the local law referred to the "state gasoline excise tax," the local law is a general-reference statute. Although the local law immediately adds the phrase "provided for by Act No. 224," that phrase

9

cannot modify "state gasoline excise tax" because Act No. 224 does not levy a gasoline excise tax at all. Rather, the phrase "provided for by Act No. 224" modifies the term "county's share."

When the local law was enacted in 1969, the gasoline excise tax was imposed under Ala. Code 1940 (1958 Recomp.), Title 51, § 647. When the local law referenced that tax, it did so in general terms rather than by referencing that section. Accordingly, the local law's reference to the "state gasoline excise tax" was a general reference.

At the time the local law was enacted, Alabama's gasoline excise tax was a single tax. When the Legislature enacted the ATETA, it imposed a tax of "[e]ighteen cents ($.18) per gallon on gasoline, which is comprised of a seven cents ($.07) excise tax, a supplemental five cents ($.05) excise tax, and an additional six cent ($.06) excise tax." § 40-17-325(a)(1), Ala. Code 1975. Nevertheless, because the local law generally referenced the "state gasoline excise tax," the fact that the ATETA imposes multiple excise taxes on the sale of gasoline rather than the single excise tax in effect at the time the local law was enacted does not affect the validity of the local law. Accordingly, the local law applies to the gasoline excise taxes collected under the ATETA just as much as it

did to the single gasoline excise tax in effect when the local law was enacted.

By contrast, when the local law referred to the "county's share" of the proceeds of the gasoline excise tax, it referenced Act No. 224 by its statutory citation. Based on that reference, the County parties urge us to construe the local law as a specific-reference statute that incorporates only Act No. 224's distribution scheme as it existed in 1969, not subsequent revisions to the distribution scheme found in the ATETA. As a result, the County parties contend that, because the sections of the Alabama Code that codified Act No. 224 (see note 3, supra) were expressly repealed by the ATETA, the distribution scheme that the local law incorporated is no longer in effect and, therefore, the local law is defunct because there is no longer a field of operation for it.

The County parties' argument is somewhat persuasive on its face if the specific-reference canon is taken as an absolute rule. However, from time to time it is good to be reminded that "[n]o canon of statutory interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, p. 59

11

(Thomson/West 2012). Accordingly, although the County parties are likely correct that the local law specifically refers to Act No. 224, we are not absolutely bound to give the local law the effect of incorporating Act No. 224's scheme for distributing the proceeds of the gasoline excise tax, to the exclusion of later amendments to that scheme, if we conclude that provisions of the ATETA point in the other direction. As one commentator has noted, "[f]acially specific references can, and sometimes do, operate as general legislative references." 2B Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 51.8 (7th ed. 2012).

Here, we conclude that application of the specific-reference canon is outweighed by the fact that certain provisions within the ATETA assume, as a premise, that local legislation in existence at the time the ATETA was enacted continued to apply to gasoline excise taxes levied under the ATETA. As the circuit court noted, § 40-17-359(f) and (p)(2)c.1., Ala. Code 1975, provide that "[a]ny local laws or general laws of local application now in effect regarding the distribution of the tax levied by Section 40-17-325 shall govern the distribution of the amounts allocated or apportioned within every county by this section."

12

As noted above, the local law was a general-reference statute insofar as it referred to the "state gasoline excise tax." As a result, the local law incorporated whatever state gasoline excise tax might be in effect at any given time. Accordingly, the local law incorporated the gasoline excise taxes levied by § 40-17-325. Further, the local law was in effect at the time the ATETA was enacted. Accordingly, the local law was a "local law[] … now in effect regarding the distribution of the tax levied by Section 40-17-325."

The County parties contend that the local law could not be considered a "local law[] … now in effect regarding the distribution of the tax levied by Section 40-17-325." The County parties contend that the only local laws that could govern the distribution of the tax levied by § 40-17-325 are local laws that generally refer to the Alabama gasoline excise tax or local laws that specifically reference that section. But as pointed out above, the local law does generally refer to the "state gasoline excise tax." Accordingly, the local law incorporates later revisions to the gasoline excise tax, including the ATETA's revisions. Thus, under the County parties' own argument, the local law governs the distribution of the proceeds of the gasoline excise taxes levied in § 40-17-325.

13

The County parties also contend that, even if the provisions of § 40-17-359 cited above do incorporate the local law, the local law applies only to the distribution of the proceeds of the supplemental and additional gasoline excise taxes, not to the primary gasoline excise tax. However, under those provisions, the local law would apply to the supplemental and additional gasoline excise taxes only if it "regard[s] the distribution of the tax levied by Section 40-17-325." Accordingly, the County parties' argument that those provisions incorporate the local law only as to the supplemental and additional gasoline excise taxes rests on the premise that the local law governs the distribution of the taxes levied by the ATETA. If that premise is true, then the local law applies to the proceeds of all the gasoline excise taxes imposed by § 40-17-325, including the primary gasoline excise tax. Accordingly, the County parties' alternative argument that the local law applies only the supplemental and additional gasoline excise taxes fails.

In summary, the ATETA specifically provides that local laws that govern the distribution of the proceeds of the gasoline excise taxes levied by the ATETA remain in force. The local law generally incorporates Alabama's gasoline excise tax, including the taxes levied by the ATETA.

14

Moreover, the ATETA itself recognizes that the local law remains in force and governs the distribution of the proceeds of the gasoline excise taxes levied by ATETA. Accordingly, we conclude that the circuit court did not err in declining to construe the local law as a specific-reference statute.

B. The ATETA was a continuation of Act No. 224.

Next, the County parties contend that the circuit court erred in holding that the ATETA was a continuation of Act No. 224 because, the circuit court determined, the ATETA immediately replaced Act No. 224 in substance. In its judgment, the circuit court relied on American Standard Life Insurance Co. v. State, 226 Ala. 383, 147 So. 168 (1933), and Allgood v. Sloss-Sheffield Steel & Iron Co., 196 Ala. 500, 71 So. 724 (1916), in which this Court held that "'[t]he repeal and simultaneous re-enactment of substantially the same statutory provisions is to be construed not as implied repeal of the original statute, but as [an affirmance and] a continuation thereof.'" American Standard, 226 Ala. at 384, 147 So. at 168 (quoting Allgood, 196 Ala. at 502, 71 So. at 725).

The County parties contend that the rule that a statute that repeals and immediately replaces a prior statute is a continuation of the prior statute applies only when the prior statute is repealed by implication.

15

When a statute expressly repeals a prior statute, however, the County parties contend, the new statute is not a continuation of the prior statute even though its provisions are substantially identical. The County parties contend that the circuit court ignored the plain meaning of the ATETA, which expressly repealed §§ 40-17-70, 40-17-73, and 40-17-74, Ala. Code 1975, in which the provisions of Act No. 224 were codified.

In support of their argument, the County parties emphasize the statement in both American Standard and Allgood that repeal and reenactment is not to be construed as an implied repeal of the original statute. American Standard, 226 Ala. at 384, 147 So. at 168; Allgood, 196 Ala. at 502, 71 So. at 725. The County parties point out that neither American Standard nor Allgood concerned statutes that contained explicit repealer clauses. Instead, the County parties rely on Tucker v. McLendon, 210 Ala. 562, 564, 98 So. 797, 799 (1924), in which this Court stated that "[a] repealing clause will be given effect according to its express terms."

However, a careful reading of American Standard and Allgood, and the authorities on which those cases relied, shows that even a statute that expressly repeals a prior statute may be construed as a continuation

16

of the prior statute if the repealing statute immediately reenacts the provisions of the prior statute. Both this Court in Allgood and the circuit court here cited the following commentary:

> "It seems, indeed, to be the general understanding that the re-enactment of an earlier statute is a continuance, not a repeal of the latter, <u>even though the later act expressly repeals the earlier</u>. ... <u>[E]ven a repealing act re-enacting the provisions of the repealed statute, in the same words, is construed to continue them in force without intermission</u>; the repealing and re-enacting provisions taking effect at the same time."

Gustav Adolf Endlich, Commentaries on the Interpretation of Statutes § 490 (1888) (emphasis added).

Thus, contrary to the County parties' argument, the fact that the ATETA expressly repealed the sections of the Alabama Code that codified Act No. 224 does not end the matter; we must examine whether the ATETA's distribution provisions were substantially identical to those of Act No. 224. We conclude that they were.

As the municipalities point out, both distribution schemes allocated 45 percent of the proceeds of gasoline excise taxes to the State. Act No. 224, § 3; § 40-17-359(c). Both distribution schemes allocated 55 percent of the net tax proceeds to the counties in Alabama for use by local governments. Act No. 224, § 4; § 40-17-359(d). Under both schemes, 10

17

percent of the amount allocated to each county was to be distributed among the municipalities in that county. Act No. 224, § 5(a); § 40-17-359(e)(1).

The differences between the distribution schemes in Act No. 224 and the ATETA are inconsequential. Most of the differences are stylistic. The main substantive differences between the two statutes regarding a county's share of the proceeds of gasoline excise taxes are as follows:

- § 40-17-359(d) of the ATETA removes Act No. 224, § 4(a)'s contingent allocation of net tax proceeds for payment of the principal and interest on bonds issued by the Alabama Highway Finance Corporation.

- § 40-17-359(e)(1)b. of the ATETA provides that distributions from counties to municipalities shall be made monthly.

- § 40-17-359(e)(3) of the ATETA removes Act No. 224's requirement that a municipality submit a plan for the use of the proceeds of gasoline excise taxes to the Alabama Highway Department before those proceeds can be distributed to that municipality.

18

- § 40-17-359(f) of the ATETA provides for the distribution of proceeds of the supplemental gasoline excise tax imposed by § 40-17-325(a)(1).

- § 40-17-359(g) and (h) of the ATETA provide that salaries of members of county governing bodies and the clerks of county commissions may be paid in part with the proceeds of gasoline excise taxes.

- § 40-17-359(j)(3) of the ATETA prohibits municipalities from commingling the proceeds of gasoline excise taxes with other funds.

- § 40-17-459(k) and (l) of the ATETA provide that a county may use the proceeds of gasoline taxes to construct and maintain roads and streets within municipalities in that county and to construct and maintain highways and traffic-control areas on public-school property.

- § 40-17-459(p) of the ATETA provides for the distribution of proceeds from the additional gasoline excise tax imposed by § 40-17-325(a)(1).

None of those differences substantially alters the "county's share" of the proceeds of gasoline excise taxes. Even the sections of the ATETA

19

that provide for the distribution of the proceeds from the supplemental and additional gasoline excise taxes essentially follow the distribution scheme applicable to the primary gasoline excise tax. The fact that the ATETA made several changes regarding the permitted uses of the proceeds of the gasoline excise taxes and removed certain conditions on the distribution of those proceeds to municipalities does not mean that the "county's share" of the proceeds of the gasoline excise taxes is any different under the ATETA than it was under Act No. 224.

The County parties also argue that interpreting an entirely new statutory scheme, rather than an amendment of an existing statute, as a mere reenactment of a prior statute is not favored. In support of that argument, they cite <u>Pinigis v. Regions Bank</u>, 977 So. 2d 446, 452 (Ala. 2007), which in turn quoted <u>Matter of Stein</u>, 131 A.D.2d 68, 72, 520 N.Y.S.2d 157, 159 (App. Div. 1987), for the following propositions:

> "'When the Legislature amends a statute, it is presumed that the amendment was made to effect some purpose and make some change in the existing law.... By enacting an amendment of a statute and changing the language thereof, the Legislature is deemed to have intended a material change in the law.... Moreover, a statute will not be held to be a mere reenactment of a prior statute if any other reasonable interpretation is attainable ....'"

Nothing in <u>Pinigis</u>'s quotation from <u>Stein</u> supports the County parties' assertion that continuation by reenactment is disfavored when the Legislature replaces a statute with an entirely new statutory scheme. Although <u>Pinigis</u> does indicate that continuation by repeal and reenactment is disfavored if there is another reasonable interpretation, it says nothing about repeal and replacement by a new statutory scheme.

Finally, the County parties fall back on their argument that the local law was a specific-reference statute. They contend that, even if the ATETA were a continuation of Act No. 224, the local law would not incorporate the ATETA's changes to Act No. 224. But, as discussed above, there are several considerations that weigh against construing the local law as a specific-reference statute.

In summary, although the ATETA substantially altered the state excise tax <u>levied</u> on the sale of gasoline, it did not substantially alter Act No. 224's <u>distribution</u> scheme. The ATETA's immediate replacement of the sections of the Alabama Code that codified Act No. 224 with substantially identical provisions in the ATETA indicates that the ATETA is a continuation of Act No. 224.

21

## C. The ATETA did not repeal the local law by implication.

Next, the County parties contend that the ATETA repealed the local law by implication. This Court has long recognized a presumption against repeal by implication. In its judgment, the circuit court relied on the following portion of this Court's decision in Day v. Morgan County Commission, 487 So. 2d 856 (Ala. 1986):

> "'[T]he policy against implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act. In such case, there is a presumption that the general or broad law was not designed to repeal the special or specific act, but that the special or specific act was intended to remain in force as an exception to the general or broad act, and there is a tendency to hold that where there are two acts, one special or specific act which certainly includes the matter in question, and the other a general act which standing alone would include the same matter so that the provisions of the two conflict, the special or specific act must be given the effect of establishing an exception to the general or broad act. Hence, it is a canon of statutory construction that a later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by the irreconcilability of the continued operation of both, or unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal. Unless there is a plain indication of an intent that the general act shall repeal the special act, the special act will continue to

22

> have effect, and the general words with which it conflicts will be restrained and modified accordingly, so that the two are to be deemed to stand together, one as the general law of the land, and the other as the law of the particular case.'"

487 So. 2d at 859 (citations omitted).

The circuit court noted that the ATETA did not expressly repeal the local law. The circuit court also observed that the ATETA and the local law were not irreconcilable. It reasoned that, although the ATETA expressly stated the Legislature's intent to "establish an efficient, uniform, motor fuel tax collection and enforcement system," § 40-17-321, Ala. Code 1975 (emphasis added), it did not substantially alter the scheme by which the proceeds of that tax are distributed. The circuit court noted that the ATETA does not preclude a distribution from a county to municipalities within that county in addition to the distribution provided for in the ATETA. Accordingly, the circuit court applied the presumption against repeal by implication.

The County parties contend that the circuit court erred in applying the presumption against repeal by implication because, they assert, the ATETA was a comprehensive revision of Alabama's gasoline-excise-tax scheme. They rely on Pittsburg & Midway Coal Mining Co. v. Tuscaloosa

23

County, 994 So. 2d 250 (Ala. 2008), in which this Court held that the Local Tax Simplification Act of 1998 ("the LTSA"), Act No. 98-192, Ala. Acts 1998, was a comprehensive revision of the statutory scheme pertaining to a particular subject and, thus, that it repealed prior local acts. They contend that the ATETA similarly did so. However, a careful reading of Pittsburg & Midway shows that the ATETA was not so comprehensive as to allow repeal by implication.

In Pittsburg & Midway, this Court quoted the same portion of Day that the circuit court quoted and that we have quoted above. It also quoted another portion of Day that included the following paragraphs from Statutes and Statutory Construction:

> "'"The enactment of a general law broad enough in its scope and application to cover the field of operation of a special or local statute will generally not repeal a statute which limits its operation to a particular phase of the subject covered by the general law.... An implied repeal of prior statutes will be restricted to statutes of the same general nature, since the legislature is presumed to have known of the existence of prior special or particular legislation, and to have contemplated only a general treatment of the subject matter by the general enactment. Therefore, where the later general statute does not present an irreconcilable conflict the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law.

24

> "'"However, since there is no rule of law to prevent the repeal of a special [statute] by a later general statute, prior special or local statutes may be repealed by implication from the enactment of a later general statute where the legislative intent to effectuate a repeal is unequivocally expressed. A repeal will also result by implication when a comprehensive revision of a particular subject is promulgated, or upon the predication of a statewide system of administration to replace previous regulation by localities."'"

994 So. 2d at 261 (quoting Day, 487 So. 2d at 858-59, quoting in turn Sutherland, Statutes and Statutory Construction § 23.15 at 245 (Sands 4th ed. 1985)) (emphasis omitted). This Court concluded that the LTSA manifestly repealed the local legislation at issue in that case because the LTSA was enacted to bring uniformity to local taxing systems. This Court further noted that the LTSA specifically referred to the types of special and local acts that it did not repeal or amend.

Here, although the ATETA was a comprehensive revision of Alabama's gasoline-excise-tax scheme, it was not enacted to institute a uniform statewide system in an area that had been previously subject to local regulation. Distribution of the proceeds of gasoline excise taxes was the subject of statewide legislation before the ATETA; the ATETA was designed to bring uniformity to the State collection and enforcement system, not necessarily to the local distribution system. Indeed, the

25

ATETA expressly contemplates diversity in the distribution of the proceeds of gasoline excise taxes to local-government entities. The ATETA specifically provides that "the Legislature may by general or local laws prescribe other distributions within counties to local governments." § 40-17-359(p)(2)c.1.

The County parties contend that, even if the ATETA contemplates local variation in the distribution of the proceeds of gasoline excise taxes, it does so only with regard to the supplemental and additional gasoline excise taxes, not the primary gasoline excise tax. The County parties note that the only provisions of the ATETA recognizing local variation are those provisions distributing the proceeds of the supplemental and additional gasoline excise taxes. They contend that, unless there is an express provision in a general law that allows local variation, local legislation is prohibited. In support of that argument, they cite Jefferson County v. Braswell, 407 So. 2d 115, 119 (Ala. 1981). In that case, this Court held that local legislation did not violate the constitutional prohibition in § 105, Ala. Const. 1901, against a local law addressing the same "case or matter" as a general law. But our decision in that case was not based on a provision in a general statute permitting local variation.

26

In that case, we noted that § 104, Ala. Const. 1901, specifically permitted local variation regulating or prohibiting the sale of liquor. Here, although there does not appear to be an express constitutional provision allowing local variation in the distribution of the proceeds of excise taxes, this Court has repeatedly held that local legislation appropriating tax proceeds does not violate § 105. Barnett v. Jones, 338 So. 3d 757 (Ala. 2021); Drummond Co. v. Boswell, 346 So. 2d 955 (Ala. 1977). Regardless, nothing in Jefferson County supports the County parties' argument that a general statute must specifically authorize local legislation in order for local legislation to apply.

In addition to the fact that the ATETA contemplated local legislation, we further note that the ATETA specifically provides that local legislation regarding the distribution of the proceeds of gasoline excise taxes continues in force. As discussed above, § 40-17-359(f) and (p)(2)c.1. provide that "[a]ny local laws or general laws of local application now in effect regarding the distribution of the tax levied by Section 40-17-325 shall govern the distribution of the amounts allocated or apportioned within every county by this section."

For these reasons, the fact that the ATETA was a comprehensive revision of Alabama's gasoline-excise-tax scheme does not mean that it was so comprehensive as to repeal the local law by implication. Rather, the ATETA itself contemplates local variation regarding the distribution of the proceeds of gasoline excise taxes.

### IV. Conclusion

For these reasons, we affirm the circuit court's judgment.

AFFIRMED.

Wise and Stewart, JJ., concur.

Mitchell, J., concurs in part and concurs in the result, with opinion.

Shaw, Bryan, Sellers, Mendheim, and Cook, JJ., concur in the result.

MITCHELL, Justice (concurring in part and concurring in the result).

I agree with the main opinion that Act No. 859, Ala. Acts 1969 ("the local law"), is, in part, a general-reference statute and that the local law therefore applies to the tax levied under the Alabama Terminal Excise Tax Act, § 40-17-320 et seq., Ala. Code 1975 ("the ATETA").  I also agree that § 40-17-359(f), Ala. Code 1975, preserves the local law and that the ATETA did not implicitly repeal the local law.  Consequently, I agree that the Russell County Commission is still obligated to provide the municipalities in Russell County with 10 percent of its share of revenues collected under the ATETA.  Because this analysis is sufficient to affirm the decision below, I decline to join the remainder of the opinion.